### H. A. PORTER v. THE STATE OF TEXAS.

#### No. 7462.

1. **School Districts May be Divided.**—There is nothing in the Act of February 6, 1884 (Laws 1884, page 43), prohibiting the county commissioners from subdividing a school district into two or more districts, provided the majority of the legal voters of the district to be divided should not object.

2. **Power of County Commissioners to Divide Districts.**—The statute confers upon the Commissioners Court the immediate power to alter the school districts, and its exercise is not made dependent upon any precedent act or condition. It is to be exercised only in the event that a majority of the voters consent. The court has the power to adopt any method satisfactory to themselves to ascertain the consent of those to be affected by the change.

**3.   Parties Interested in School Matters.**—Parents of children within the scholastic ages, residents in a school district, may prosecute a suit for mandamus against the county judge for refusal to appoint trustees for the district when it is his duty under the school laws to do so.

**4.   Action of Commissioners Court Final.**—That the action of the Commissioners Court was impolitic is no answer to a petition for a peremptory mandamus urged to compel the county judge to appoint trustees for a school district formed from part of another district.

**5.   Mode of Ascertaining Consent of Voters.**—It may be doubted whether the action of the Commissioners Court in ascertaining the consent of the voters interested can be revised; but conceding that it may, an answer setting up irregularities and not expressly negativing the consent would not form a basis for such investigation.

**6.   Apportioning the School Funds.**—The county judge was properly ordered to apportion the school funds pro rata to the new district, including funds realized from a special school tax assessed against the property in the original district.

**7.   Mandamus of County Judge.** — The county judge may be compelled to appoint trustees and to apportion the school funds to a newly ordered school district when such judge refuses to do so.

APPEAL from Taylor.   Tried below before Hon. T. H. Connor. The opinion states the case.

*John Bowyer*, for appellant.— 1.   The County Commissioners Court has no power after school districts are once established to subdivide such districts and carve new districts out of existing districts.   Its authority only extends to alteration of lines of existing districts, with the concurrence of such existing districts as such alteration will affect.   School Laws, ch. 8, sec. 2, p. 15; Laws 1884, pp. 43, 44.

2.   The Commissioners Courts are courts of limited jurisdiction with reference to the alteration of school districts, and the existence of the facts necessary to call their special powers into operation must be alleged and proved before their orders are entitled to respect.   Freem. on Judg., secs. 454, 517.

3.   The office of a proviso in a statute is either to except something from the enacting clause, to restrain its generality, or to exclude some possible ground of misinterpretation of it as extending to cases not intended by the Legislature to be brought within its purview, and such proviso is strictly construed.   Minis v. United States, 15 Pet., 423; Wyman v. Southrat, 10 Wheat., 1; United States v. Dickson, 15 Pet., 141; Roberts v. Yarboro, 41 Texas, 452; Collins v. Warren, 63 Texas, 315.

4.   A party seeking any remedy must show his interest in that which he seeks or he can not maintain the action.   San Antonio v. Strumberg, 70 Texas, 366; Arberry v. Beavers, 6 Texas, 457; Tabor v. Commissioner, 29 Texas, 508; Cullem v. Latimer, 4 Texas, 329.

5.   Every court of limited powers must determine its own jurisdiction in the first instance, but that does not preclude a court of general powers from making some inquiry.   Lindsey v. Luckett, 20 Texas, 516; Milliken

v. City Council, 54 Texas, 388, and authorities cited; Bourgeois v. Mills, 60 Texas, 76; Bounds v. Kirven, 63 Texas, 159; Floyd v. Turner, 23 Texas, 294; Anderson County v. Kennedy, 58 Texas, 616.

*H. L. Bentley* and *H. L. Daugherty*, for appellee.— 1. County commissioners have power after school districts are once established to change them with the consent of a majority of the legal voters in all the districts affected by such change, and in so doing they may subdivide them or carve new districts out of existing districts, as in their judgment seems best. And being the exclusive judges as to whether or not a majority of such legal voters do consent, and no appeal being provided for by law from their action, their action is final; no other person or court can either directly or collaterally attack or revise their action. School Laws of Texas, ch. 8, sec. 2, p. 15; Laws 1884, pp. 43, 44.

2. Commissioners Courts are courts of record, and the presumption of law is that they act within their jurisdiction. Further, they have under the laws of Texas exclusive jurisdiction of the matter of organizing or changing school districts, and no appeal from their acts is given. Hence when this jurisdiction has been exercised no other court can revise its action, either directly or collaterally. Freem. on Judg., secs. 516, 524; State v. Goowin, 69 Texas, 55; Ex Parte Whitlow, 59 Texas, 274; Burkett v. Scarborough, 59 Texas, 495; State v. De Gress, 53 Texas, 400; Williamson v. Lane, 52 Texas, 346; Ex Parte Towles, 48 Texas, 436; Rogers v. Johns, 42 Texas, 339; Duer v. Police Court, 34 Texas, 283; Walker v. Tarrant County, 20 Texas, 21; O'Docherty v. Archer, 9 Texas, 296; Arberry v. Beavers, 6 Texas, 457; Baker v. Chisholm, 3 Texas, 157; Field v. Anderson, 1 Texas, 437.

3. A parent of a child entitled to the benefits of the school fund in any county in Texas is the proper party to maintain an action for mandamus to compel county superintendents to perform the ministerial duties imposed upon them by law when they neglect or refuse to do so. In the case at bar it was a ministerial duty on the part of appellant to appoint school trustees in and for school district No. 17; and he having refused to do so, the District Court had jurisdiction to compel him to perform this duty, and the writ of mandamus was necessary and proper. High on Ex. Rem., secs. 431, 439; Rev. Stats., art. 3739; Girardin v. Dean, 49 Texas, 248; Dauenhauer v. Devine, 51 Texas, 487; Red v. Johnson, 53 Texas, 288; Anderson County v. Kennedy, 58 Texas, 624; Alexander v. Holt, 59 Texas, 205; High on Ex. Rem., secs. 34, 36, 75.

4. While the proceedings are in reality for the benefit of the child, the father is the proper party to make the application for writ of mandamus to compel a school officer to perform a duty necessary to secure such child in his legal rights and privileges so far as public schools are

concerned.    High on Ex. Rem., sec. 438; People v. Board of Ed., 18 Mich., 400.

5.    A school district is not such a corporation under the laws of 1884, section 37, page 45, as that it can only be disorganized in the manner prescribed under the incorporation laws of the State.    And where a school district which under article 3735 of the Revised Statutes voted for a special school tax was afterwards by the County Commissioners Court subdivided into two or more school districts, and no territory incorporated with the subdivisions which had not been included in the original district, the school tax will not be abrogated or changed.    Rev. Stats., art. 3733; Laws 1884, secs. 32–38.

GAINES, ASSOCIATE JUSTICE.—This was a suit for a mandamus, brought in the name of the State upon the relation of certain citizens of Taylor County, to compel the appellant, as county judge of that county, to appoint trustees for a certain new school district designated as No. 17. The petition alleged that relators were residents and tax payers of that district, and· that each of them was the parent of children within the scholastic age.    It alleged also that district No. 17, together with another numbered 16, had been carved out of the territory originally belonging to district No. 11 by an order of the Commissioners Court passed on the 13th · day of May, 1889, but that there was no election for trustees of district No. 17 on the first Saturday in June, 1889, as the law required.    It was also averred that upon the failure to hold the election the respondent, as county judge of Taylor County, had been petitioned to appoint such trustees as the law made it his duty to do, but that he had refused to do so. It was also alleged that an appeal had been taken to the Superintendent of Education, and that he had ruled that the respondent was not bound to make an appointment, and that thereupon an appeal was prosecuted to the Board of Education, and that they had reversed the ruling of the Superintendent, and held that district No. 17 had been legally constituted, and that the respondent should appoint the trustees; but that notwithstanding all this he still refused to do so.

The respondent filed a general demurrer and special exceptions to the petition, and a special answer in the nature of a return to the writ.    His demurrer and exceptions were overruled and a demurrer was sustained to his answer.    He declined to amend, and judgment was entered awarding the peremptory writ of mandamus as prayed for.

Appellant's first proposition is that the general demurrer to the petition should have been sustained, because the Commissioners Courts have no power under the statute to subdivide a school district once established and to carve out of it one or more new districts.    Section 29 of the "Act to establish and maintain a system of public free schools for the State of Texas," etc., passed February 6, 1884, is as follows:    "It shall be the duty

of the County Commissioners Court of all counties not exempted from this section to subdivide their respective counties into convenient school districts at least one month before the first Monday in October, 1884. Said courts shall designate said school districts by numbers; provided, that when districts are once established they shall not be changed without consent of a majority of the legal voters in all districts affected by such change." Laws 1884, p. 43.

The contention is that this section authorized the court to change the boundaries of existing districts, but not to subdivide a district and to establish in its territory two or more districts. But we see nothing in the language quoted which justifies such a construction. It is not demanded by the letter of the law and is contrary to its spirit. When the act was passed there were, as there are still, many sparsely settled counties in the State in which both population and wealth were making a rapid increase, and it was doubtless anticipated that by reason of increasing taxable values and of denser populations it would be desirable to divide and even to divide again the districts as first established. No reason suggests itself to our minds why this should not be done, provided a majority of the legal voters of the district to be divided should not object.

It is also insisted that the petition does not show that the power of the Commissioners Court to change district No. 11 was properly called into exercise. The statute confers upon the court the immediate power to alter the districts, and its exercise is not made dependent upon any precedent act or condition. It is to be exercised, however, only in the event that a majority of the voters consent.

The petition alleges in substance that the order creating the new districts was passed with the consent of a majority of the legal voters. The method by which the will of the majority is to be determined is not prescribed by the act but is left to the discretion of the court, and the court had the power to adopt any method satisfactory to themselves and to those to be affected by the change. Graham v. City of Greenville, 67 Texas, 62. From the face of the petition it is to be presumed that a reasonable and just method was adopted.

The petition alleging that the relators were parents of children within the ages of eight and sixteen years and were residents in school district No. 17, showed such an interest in the subject matter of the suit as enabled them to prosecute it. The exception to the petition on that ground was not well taken.

We are also of opinion that the court did not err in sustaining the exceptions to respondent's answer. That answer alleged that if the district was divided the funds to be apportioned to the new district No. 11 would not be sufficient to maintain the public schools for six months in the year, and, as stated in the appellant's brief, "that school district No. 11 was a taxing district, and that the tax had never been increased nor diminished,

but was standing on tax rolls for 1889 ready for collection; that the relators were interested in a private college, and were seeking to have trustees appointed so as to control the school fund that would be gained by district 17, and to control same in interest of the college; that he was present when the petition was presented asking for creation of district 17, and knew that a majority was really opposed to the dismemberment of said district as shown by petition, and that schools could not be maintained in school district No. 11 more than four or five months in the year, while they could be maintained eight months before the dismemberment."

The alleged facts so stated in the answer were very proper for the consideration of the court while deliberating upon the proposition to divide the district. They would tend to show that it may have been impolitic to pass the order. But if true, they did not invalidate the action of the court. The determination of that body was final upon all those questions, and its action can not be reviewed in this proceeding.

The answer also avers that the Commissioners Court, in determining whether or not a majority of the legal voters in district No. 11 consented to the change, acted upon the petitions presented for and against the proposition, and attempts to show that they erred in deciding who were legal voters and in determining the result. It may be doubted whether their action in that particular can be reviewed in a collateral action except, possibly, for fraud; but, conceding that it may be, we are of opinion that the allegations in the answer in regard to that matter are not sufficient to present any defense to this action. It is alleged that, against the protest of the relator, the court counted as legal voters only those who were qualified to vote at the last election, but it is not averred that all the voters then qualified to vote had not been counted, or that if they had been the result would have been different. It is averred that by direction of the Commissioners Court, at the request of a petitioner against the division of the district, the clerk proceeded to count all the legal voters whose names were subscribed to the respective petitions, and that in pursuance of such direction he made out in presence of the court lists of those for and of those against the division, which showed 49 for and 52 against the proposition for dividing the district; but it is not alleged that the lists so made were correct. All the averments in reference to this matter may be true, and yet the court may have correctly determined that a majority of the legal voters favored the establishment of the new districts.

There was no error in commanding the respondent not only to appoint the trustees, but to apportion the school money belonging to old district No. 11 among the three new districts. He is required by law to apportion the State and county school fund among the several districts or communities in proportion to the scholastic census. Act of Feb. 6, 1884, Laws 18th Leg., sec. 46, p. 47.

The Legislature must have known that when old districts were changed

or subdivided into new districts an apportionment of the school funds was necessary, and it is reasonable to presume that they contemplated that the county judge, as the administrator of the public school finances, should perform that function.

The assignments we have considered raise all the questions worthy of discussion.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered November 21, 1890.