F. J. BARRETT, COUNTY JUDGE, v. E. W. COLEMAN ET AL., TRUSTEES.

### No. 2429.

**1. School Districts—Change of District—Majority Vote.**

Section 40, Acts of 1893, p. 194 (Revised Statutes 1895, art. 3938), provides that when the County Commissioners Court has established school districts, "they shall not be changed without the consent of a majority of the legal voters in all districts affected by such change." Held, that a proposition to form a new district from portions of two established districts must obtain a majority vote in each of the two districts, and, without this, that a majority of the aggregate vote of both the districts is not sufficient.

**2. Same—Void Order of County Commissioners Court.**

An order of the County Commissioners Court creating such new district, where one of the districts affected had not given a majority in favor of the change, is void and subject to collateral attack.

APPEAL from Clay. Tried below before Hon. GEO. E. MILLER.

*L. C. Barrett,* for appellant.

*J. A. Templeton,* for appellees.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought in the District Court on behalf of E. W. Coleman, S. B. Householder, and John Doyle, as trustees of school district No. 56 of Clay County, against F. J. Barrett, County Judge of said county, for a writ of mandamus to compel

the said County Judge to apportion and set apart to said school district No. 56 its pro rata share of the free school fund for said county for the year 1895, amounting to $140.87.

The appellant contends that No. 56 is not a lawfully established school district, and is therefore not entitled to any part of the school fund. The history of its formation is as follows: On January 14, 1895, the Commissioners Court of Clay County, upon proper application, made an order submitting the question to the qualified voters of school districts Nos. 36 and 46 as to whether a certain described territory to be taken from the two districts should be established and formed into a new school district, to be known as No. 56. The election took place on February 11 following, and resulted as follows: In school district 36 there were 25 votes cast in favor of creating the new district, and 34 cast against it. In school district No. 46 there were 32 votes cast in favor of creating the new district, and 4 cast against it. Adding all the votes together cast in both districts for the new district, and we have 57; and adding together all cast against the new district, and we have 38; showing a clear majority of 19 votes in the aggregate in favor of creating the new district.

Upon canvassing the returns of the election by the Commissioners Court, they declared the result as above, and declared that a majority of the votes polled were in favor of creating the new district, and at once entered the proper order creating and establishing school district No. 56 out of the territory described in the original order, and thereupon appellant, as County Judge, appointed appellees trustees for the district. Later on a petition was presented to the Commissioners Court asking for an order directing an election to be held in the new district to ascertain whether a tax of 20 cents on $100 worth of taxable property should be levied and collected in the district to supplement the State school fund. This election was held July 27, and was in favor of levying the additional tax.

The appellant testified that he refused to apportion the school fund to No. 56 because of instructions received from the Hon. Jas. M. Carlisle, State superintendent of public free schools of Texas.

The case turns upon the proper construction of art. 3938 of our Revised Statutes of 1895 (Acts of 1893, p. 194, sec. 40), which reads as follows: "It shall be the duty of the County Commissioners Court of all organized counties, not already subdivided, to subdivide their respective counties into convenient school districts by the 1st day of September, 1893, or as soon thereafter as practicable, and counties hereafter organized shall be subdivided before the beginning of the next ensuing school year. Said courts shall designate said school districts by numbers; provided, that when districts are once established they shall not be changed without the consent of a majority of the legal voters in all districts affected by such change."

The meaning of the Legislature is not clear if we look alone to the wording of the proviso, for the language used is ambiguous and sus-

ceptible of two constructions; but when we come to consider that the Commissioners Courts, in the first instance, are required to "subdivide their respective counties into convenient school districts, and that the changing of districts by vote of the people is often productive of strife and bickerings in the neighborhoods, especially in the formation of new districts out of portions of old ones, and that permanency of districts is more to be desired in the interests of the masses of the people than the convenience of a few, we are inclined to think that the Legislature intended that all the districts to be affected must give a majority in favor of creating the new district, before it can be formed; and if, therefore, one of the districts to be affected should fail to give a majority in favor of creating the new district, its territory cannot be taken from it. "All" in this sentence means "every."

This was an effort, in effect, to divide each district—No. 36 and No. 46 —by taking a portion of its territory and forming it into a new district, and is not dissimilar to subdividing one district into two or more districts. This latter cannot be done without the consent of a majority of the legal voters of the district, and we see no reason why the subdividing of two districts at once should change the rule.

In Porter v. The State, 78 Texas, 595, Justice Gaines, in delivering the opinion of the Supreme Court in a case where one district was subdivided, said: "No reason suggests itself to our minds why this should not be done, provided a majority of the legal voters of the district to be divided should not object." But here a majority of one of the districts to be divided did object, and its rights must be respected and its lines and limits remain intact until a majority of its qualified voters agree to a division of its territory.

It is contended, however, that the order establishing the district No. 56, if erroneous, is not void, and is not, therefore, subject to collateral attack. We think that the order was made without authority of law, and that this vice appearing in the face of the order itself rendered it absolutely void, and consequently was subject to attack collaterally, though we do not hold that this was a collateral attack, or that the order was a judicial act coming within the rule designed for the protection of orders and judgments of courts. It was more of a legislative or ministerial act than judicial, and such acts may be attacked at any time if erroneous, or revoked and set aside by the court itself whenever its error is discovered. Collingsworth County v. Myers (35 S. W. Rep., 414), decided to-day, and authorities there cited.

It is our opinion, therefore, that the judgment in this case ought to be reversed and the cause dismissed, and it is so ordered.

*Reversed and dismissed.*

Delivered March 21, 1896.

Writ of error refused.