W. D. YETT, MAYOR, ET AL. V. CHAS. B. COOK ET AL.

No. 4432.   Decided February 3, 1926.

(281 S. W., 837).

**1.—Affirmance on Certificate.**

A case can be affirmed on certificate only on "a request for affirmance signed by the party or his counsel." Revised Statutes, 1925, Article 1841. (P. 210.)

**2.—Same—Motion—Prayer for Relief.**

A motion which, though showing the applicant entitled to affirmance on certificate, disclaims request for such action, as not affording the relief desired, and asks, instead, for hearing and reformation of the judgment, will not support such affirmance on certificate; nor can this be sustained by the prayer for general relief, which could not extend to relief expressly disclaimed. (Pp. 210, 211.)

**3.—Cities—Amendment to Charter.**

Under Revised Statutes, 1925, Article 1170, the governing body of a city had a right to submit for adoption amendments to its charter which, though of a wide range, covered but a portion of the subjects necessary to be included in a city charter. These did not constitute a new charter and were not required to be drawn by a "charter committee" selected under the statute. (Pp. 211, 212.)

**4.—Cities—Election—Impractical Date.**

An amendment to a city charter required an election for city councilmen to be held on February 2, 1925, when same could not be held in compliance with the general laws of the State, a necessary requirement for such election being the furnishing election officers with complete lists of voters who had paid their poll taxes; and these lists could not be prepared and furnished between January 31, the last day the taxes were payable, and such election date. (Const. Art. 16, Sec. 2; Art. 6, Secs. 2, 4, 5; Art. 7, Sec. 3; Rev. Stats., 1925, Arts. 2975, 2984, 2992, 2993, 2996, 2997.) These requirements as to poll lists are mandatory. (Pp. 212, 214.)

**5.—Same—Mandamus.**

The charter amendment naming a date legally impossible for the first city election was so far void and it was error for a court to award mandamus requiring the city officers to hold an election thereon. (P. 214.)

**6.—Charter—Election—Date.**

The election of councilmen different in number and in duties from those of the former government was the substance of the change provided by the amendments adopted to the city charter of the city of Austin, and not the impossible date named for such election. There being a failure in this feature of the election provided for, it was within the power of the governing body of the city, by article 17, section 4, of its charter to name another date therefor consistent with the general law; and they could be required by mandamus to do so. (Pp. 214-216.)

### 7.—Same—Mandamus—Parties—Charter Amendment—Construction.

A provision in the special charter of the City of Austin giving five or more qualified voters of the city power to enforce by suit for mandamus the duty of its city officers to call an election being repealed by an amendment to the charter duly adopted, the effect of such amendment was to deprive those interested merely as citizens of the right to maintain such suit, not to authorize it by one such citizen only.   (Pp. 216, 217.)

### 8.—Same—Suit by Citizen and Tax Payer.

In elections or other matters not involving questions of taxation or unlawful expenditure of public money a mere citizen and tax payer having no other interest than that of the general public has no power to maintain a suit to control by mandamus the action of public officers, unless authorized to do so by statute.   (Pp. 217-220.)

### 9.—Same—Action by State.

Remedy for refusal of the officers of a city to call and hold an election as required of them by law may be had by suit for mandamus in the name of the State brought by or by authority of the Attorney-General. (Query: Whether by County Attorney.)   (Pp. 220-222.)

### 10.—Same—Interest of State.

The State has a justiciable interest in the maintenance and operation of its municipal corporations and may maintain action to prevent abuse of power by their officers and to protect the interests of the people at large in matters in which they can not act for themselves.   (P. 220.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

Yett and others, mayor and officers of the City of Austin, obtained writ of error on the affirmance on certificate of a judgment obtained against them by Chas. B. Cook and others requiring them to call an election for city councilmen in accordance with an amendment adopted to the charter of the city introducing the city manager plan of municipal management.

*Cofer & Cofer,* for plaintiffs in error.

To secure affirmance on certificate appellee must file a motion or request for such affirmance, signed by such party or his counsel.   Where instead of moving to affirm on certificate appellees move for and request a trial on the record and suggest delay and ask that the judgment be modified and corrected, the Court of Civil Appeals is not authorized to treat the same as a motion to affirm on certificate.   Rev. Stats., Art. 1610; Rules 3 and 11, Courts of Civil Appeals.

A suit of this nature in which one private individual, citizen and voter, has and can have no interest different from that of all

other individuals, citizens and voters, can not be maintained at the suit or on the relation of a private individual, citizen and voter. It is fundamental error for the District Judge to entertain this suit in the name and on the relation of Charles B. Cook. Kimberly v. Morris, 87 Texas, 637; Staples v. State, 112 Texas, 68; Dickson v. Strickland, 114 Texas, 176. That the error is fundamental: Smith v. Nesbitt, 235 S. W., 1107; Manes v. J. I. Case Thresh. Mach. Co., 241 S. W., 757; Worley v. Smith, 63 S. W., 903.

*White, Wilcox, Graves & Taylor, J. Harris Gardner, Coleman Gay,* and *D. K. Woodward,* for defendants in error.

The relator, Chas. B. Cook, as a citizen, tax payer and voter, was a proper party plaintiff in the petition for mandamus. Sansom v. Mercer, 68 Texas, 488; Kimberly v. Morris, 87 Texas, 637; Kimberly v. Morris, (Civ. Apps.) 31 S. W., 809; Terrell v. Middleton, 108 Texas, 14, 187 S. W., 367; Porter v. State, 78 Texas, 591; Commissioner of General Land Office v. Smith, 5 Texas, 471; McLaughlin v. Smith, 140 S. W., 248; Dubose v. Woods, 162 S. W., 3; Boynton v. Brown, 164 S. W., 893; Westerman v. Mims, 111 Texas, 29; Felton v. Kansas City, etc., R. Co., 143 S. W., 650; Railway v. Hall, 91 U. S., 343; Hamilton v. State, 3 Ind., 452; Pike County v. The State, 11 Ill., 202; Ottawa v. People, 48 Ill., 233; People v. Collins, 19 Wend., 56; Hyett v. Allen, 54 Cal., 353; Gibbs v. Bartlett, 63 Cal., 117; People v. Halsey, 37 N. Y., 344; Iowa v. Judge, 7 Iowa, 186; State v. Rahway, 33 N. J. L., 110; Watts v. Police Jury, 11 La. Ann., 141; Cannon v. Janvier, 3 Hous. (Del.) 27; State v. Brown, 38 Ohio St., 344; State v. Francis, 95 Mo., 44; Attorney-General v. Boston, 123 Mass., 460; Scott v. County Commissioners, 17 Fla., 707; McConihe v. State, 17 Fla., 238; Chumasero v. Potts, 2 Mont., 242; State v. Van Duyn, 24 Neb., 586; State v. Ware, 13 Ore., 380; Wise v. Bigger, 79 Va., 269; People v. Board of Education, 127 Ill., 613; State v. Gracey, 11 Nev., 223; Board v. State, 61 Ind., 75; Moses v. Kearney, 31 Ark., 261; State v. City Council, 39 N. J. L., 620; 38 Corpus Juris, 839, et seq.; High on Extraordinary Legal Remedies, Secs. 430, 431.

Dillon on Municipal Corporations (5th Ed.) Secs. 1494, 1495 and 1496, citing the following English authorities: Rex v. Cambridge, 4 Burr., 2008; Rex. v. Tregony, 8 Mod., 111-113; Rex v. Abington, 1 Ld. Raym., 561; Rex. v. St. Martin, 1 T. R., 148; Rex v. Liverpool, 1 Barnard, 83; Rex. v. Woodrow, 2 Term R., 732; Rex v. Scarborough, 2 Stra., 1180; Rex. v. Leyland, 3 M. &

S., 184; Rex v. Thetford, 8 East, 270; Rex v. Norwich, 1 B. & Ad., 310; Tapping on Mandamus, 165; Rex v. York, 4 T. R., 669; Stephen's Nisi Prius, 2293-2295; Rex v. Winchester, 7 A. & E., 215; Regina v. Pembroke, 8 Dowl., P. S., 302; Regina v. Leeds, 7 A. & E., 963; Grant on Corpns., 204, 208, 213, 219; Rex v. Bankes, 3 Burr., 1454; Rex v. Cambridge, 4 Burr., 2008, 2011; Rex v. Radford, 1 East, 80; Rex v. Truro, 3 B. & A., 592; Rex. v. Derby, 7 A. & E., 419; Rex v. Hiorns, 7 A. & E., 960, 966; Rex v. Colchester, 2 T. R., 259; People v. Brooklyn, 77 N. Y., 503; Rex v. Cambridge, 4 Burr., 2008, 2011; Rex v. Scarborough, 2 Stra., 1180; Rex v. Norwich, 1 B. & Ad., 310; Angell & Ames, Sec. 700; and as indicating a similar rule in this country, the following American Authorities: People v. Fairbury, 51 Ill., 149; State v. Young, 6 S. Dak., 406; State v. Smith, 22 Minn., 218.

If this suit cannot be maintained on the relation of the individual citizen, voter and taxpayer, it may be doubted whether there exists in any one the right to maintain the suit in any event. With respect to such matters, neither the state nor the county officers have any duty to perform. The attorney-general being the constitutional officer charged with the duty of representing the state in the superior courts, and in specific instances in the lower courts, and the county and district attorneys being the constitutional officers charged with the duty of representing the state in trial courts, have no official duties to perform in connection with this matter. It seems to be well settled that in reference to the matter wherein these officers are charged with no official duty, no suits may be instituted and maintained by them in the name of the state or the county. Duncan v. State, 67 S. W., 903. While the refusal of a public officer or board to take such action as may be required for the proper enforcement of the law is no more the concern of one citizen than of another, nevertheless it is not only the right but the duty of every citizen to insist upon the prompt and proper performance of official duty which affects the public interest generally. And it is enough in this instance that the petitioner for the writ of mandate is a qualified elector of the municipality, and as such interested in having the law enforced. High Extr. Rem. Sec. 431, 433; Maxwell v. Bd. of Supervisors, 53 Cal., 389; Hyatt v. Allen, 54 Cal., 353; Eby v. Board, 87 Cal., 166, 25 Pac., 240; Frederick v. San Luis Obispo, 118 Cal., 391, 50 Pac., 661; Union Pac. R. R. Co. v. Hall, 91 U. S., 355, 23 L. Ed., 428; State v. Weld, 39 Minn., 426, 40 N. W., 562; Pumphrey v. Baltimore, 47 Md., 145, 28 Am.

Rep., 446; State v. Menzie, 17 S. D., 535, 97 N. W., 745; State v. Lien, 9 S. D., 297, 68 N. W., 748; People v. Swanstrom, 79 App. Div., 94, 79 N. Y. S., 936; State v. County Court, 33 W. Va., 589, 11 S. E., 72; State v. County Court, 47 W. Va., 672, 35 S. E., 959.

Statutes fixing the time for holding elections have been held to be directory and not mandatory to the extent of permitting and authorizing an election at a later date than that named in the statute, where the authorities whose duty it is to call the election or provide for and conduct it neglect to perform the duty, and the obligation still remains. State Ex Rel. Gay v. City of Buckhannon, 123 S. E., 182; State v. Chouteau County, 44 Mont., 51, 118 Pac. 804; State v. Franklin County, 35 Ohio State, 458; Conn v. Richmond, 17 Cal., 705, 121 Pac., 714; State v. Philips, 96 Mo., 570, 10 S. W., 182; Tazewell v. Herman, 108 Va., 416, 60 S. E., 767; High's Extraordinary Legal Remedies, Sec. 14; Board of Commissioners v. Handley, 63 Fla., 90.

The Supreme Court of Texas, having acquired jurisdiction of the entire controversy, has the jurisdiction and power, and is under the duty, to determine the issues presented in the case in such manner as to afford relator the relief prayed for in his original petition. Arts. 1626, 1627, R. S., 1911; Kinsey v. Stewart, 14 Texas, 457; Lucky Pat, etc., Ass'n. v. Cox, 230 S. W., 858; Aldridge v. Pardee, 189 U. S., 429; Delaware v. Beaumont Irrigation Co., 136 S. W., 518; Jackson v. Jeringer, 77 S. W., 217; State Ex Rel. Gay v. City of Buckhannon, 123 S. E., 182; People Ex Rel. Young v. Trustees of Fairbury, 51 Ill., 149; Russell v. Wellington, 157 Mass., 100; State Ex Rel. Webster v. Commissioners of Baltimore County, 29 Maryland, 516; People Ex Rel. Jacobs v. Murray, 15 Cal., 221; McConihe v. State Ex Rel. McMurray, 17 Fla., 238; Lamb v. Lynd, 44 Pa., 336; State Ex Rel. Heironimus v. Town of Davis, 85 S. E., 779; State Ex Rel. McGregor v. Young, 61 N. W., 165; Dillon on Municipal Corporations, 5th Ed., Vol. 4, Paragraphs 1495, 1496; 28 Cyc., 405.

If this Court should hold that the order of affirmance on certificate has been improvidently granted because of lack of sufficient application therefor, no question of importance will have been decided for it is altogether apparent that relator, by filing a statutory application for that relief, can secure it within a limited time.

Assuming, therefore, that nothing more than an affirmance of this case upon certificate, either in this proceeding or hereafter is awarded, the voters of the City of Austin are presented with

the problem of applying to the District Court once more either in this suit or in a new proceeding of the same character for the holding of an election, to which relief, beyond doubt of any character, they are entitled under the authorities. But the granting of that relief in the trial court would be a hollow mockery if the interminable road of appeal is again opened to plaintiffs in error as an easy method of continued usurpation of office. The process can be continued indefinitely and this scandalous condition perpetuated by officers who have been held, after full hearing upon the merits, to be under the duty of calling the election prayed for.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

On January 2, 1925, Charles B. Cook filed this suit for mandamus against W. D. Yett, Mayor, and other officers of the City of Austin, to secure the issuance of a writ of mandamus requiring the officers named to call an election for Councilmen for the first Monday in February, 1925.

One phase of the controversy was before us last term, and we refer to the opinion then rendered for a fuller preliminary statement of the case. 115 Texas, 175, 268 S. W., 715.

A peremptory writ of mandamus was awarded. An appeal was taken by the plaintiffs in error Yett and others, to the extent of giving notice of appeal, filing assignments of error, and the execution of a supersedeas bond. They did not, however, file a statement of facts in the lower court or a transcript in the Court of Civil Appeals. In this state of the case the defendant in error Cook filed a motion for leave to file a transcript in the Court of Civil Appeals, to reform, and as reformed to affirm the judgment of the trial court. A complete transcript accompanied this motion. That court overruled the prayer to reform and modify the judgment, and affirmed the case as on certificate. The case is before the Court on writ of error granted W. D. Yett and others. The motion of the defendant in error acted upon by the Court of Civil Appeals was in no sense of the word a motion to affirm on certificate, "a request for affirmance signed by the party or his counsel," as contemplated by the statute and rule named, and without which the Court of Civil Appeals was without power to affirm on certificate. Revised Statutes (1925), Art. 1841 (1610), Rule 11A.

We quote from the motion in part as follows:

"That by virtue of such default petitioner is entitled upon filing of a certificate as provided by law, to have this cause affirmed as upon certificate, but that such an affirmance upon certificate would be of no avail to petitioner, and would deny to petitioner all relief and protection of the law, in this, * * *

"Petitioner prays that upon a consideration of this motion and of such transcript, that such transcript be ordered filed, and said cause be placed upon the docket of this Court, and that upon a hearing had after notice given that the judgment of the trial court be so reformed as to require the respondents named in plaintiffs' original petition, to-wit, W. D. Yett as Mayor, H. L. Haynes, George P. Searight, H. W. Nolen and C. N. Avery, as Councilmen, and Joe Hornsby as City Clerk of the City of Austin, to fix a date for the holding of such election, * * * * "

The prayer also contains a request for general relief.

That the defendant in error did not move for an affirmance on certificate is evident for the reason that the first part of the motion, quoted above, expressly negatives his purpose to ask for any such relief, and the prayer for general relief cannot be construed as being a prayer for anything which is expressly excepted therefrom by other portions of the pleading. Denison v. League, 16 Texas, 400, 406, 408; Hipp v. Huchett, 4 Texas, 19, 23; Silliman v. Gano, 90 Texas, 637, 649; Ency. of Pleading and Practice, Vol. 16, pp. 805 to 808. See also Story's Equity Pleadings (9th Ed.), Sec. 42.

The action of the Court of Civil Appeals in affirming the case as on certificate, being without pleading to support it and contrary to the express and direct purposes of the motion, was erroneous. Wheeler v. Wheeler, 65 Texas, 573. See generally Michie's Texas Digest, Vol. 13, p. 1138.

In view of the disposition to be made of this case, it is immaterial whether the trial below was before the judge in chambers or before the court in session. Hence we will not discuss that question.

The assignment of plaintiffs in error that the charter amendments adopted by the voters and here involved were not validly adopted, because not drawn by a charter committee, selected under the statute, is without merit. Under Revised Statutes (1925), Article 1170, the governing body of the city had a right to submit amendments to the existing charter to the voters of the city. The amendments before us were submitted and adopted under this Article. These amendments,

while covering a wide range, do not constitute a new charter. They fall far short of such an instrument, covering but a portion of the subjects necessary to be included in a city charter. 19 Ruling Case Law, 751, Sec. 55; People Ex Rel. Moore v. Perkins, 56 Colo., 17, Annotated Cases 1914D, p. 1154, and authorities cited in the notes on page 1172; City and County of Denver v. New York Trust Co., 229 U. S., 123, 144, 145, 57 L. Ed., 1101.

The mandamus awarded required plaintiffs in error to call an election for city councilmen on February 2, 1925, in accordance with one of the charter amendments lawfully adopted on August 8, 1924, at which time all other amendments to be hereafter referred to were adopted by a vote of the electors of the city. There is no statement of facts in the record, but it is conceded that we may take judicial notice of the charter of the city and the adopted amendments, all of which we have before us for examination.

Sections 1 and 4 of Article XVII, which Article is one of the amendments adopted, read in part as follows:

"Section 1. On the first Monday in February, A. D. 1925, and on the first Monday in April, A. D., 1927, and at each successive interval of two years thereafter on the first Monday in April, there shall be elected at large by the qualified voters of the City of Austin, at a general election to be held for that purpose, five councilmen, who shall constitute the City Council, * * *

"Section 4. All city elections shall be governed, except as otherwise provided by the charter, by the laws of the State of Texas governing general and municipal elections, so far as same may be applicable thereto; and in event there should be any failure of the general laws or this charter to provide for some feature of the City elections, then the City Council shall have power to provide for such deficiency and no informalities in conducting a city election shall invalidate the same, if it be conducted fairly and in substantial compliance with the general laws, where applicable, and the charter and ordinances of the City."

The above quotation shows that there was to be held but one election for councilmen on any February 2nd. The biennial election of officers thereafter is to take place each two years after the first Monday in April, 1925. From this we think it clear that the election on February 2nd was to be a special election, as distinguished from the regular biennial election of

city officers; and is to be regarded as the first step towards carrying into execution and effect the changes in the form of city government brought about by the adoption of the amendments. Reading all the amendments and carefully checking them against the original charter provisions of the City, convinces us that the fundamental changes wrought by these amendments and the erection of a new type of city administration was a matter of paramount and controlling importance to the people who adopted the amendments, and that the date selected for holding the election for new councilmen was of secondary importance.

However, the date named in the section quoted—the first Monday in Februruary, 1925—was February 2nd, a date at which it was impossible to hold an election in compliance with the general laws of the State.

The purity of the ballot in Texas has been safeguarded by many constitutional and statutory provisions. The State Constitution, Article 16, Sec. 2; Article 6, Secs. 4, 5, 2; Article 7, Sec. 3. See generally, also, Revised Statutes (1925), Articles 2954 to 3173, and the Penal Code (1925), Articles 206 to 280.

Among other provisions having for their purpose the purity of the ballot are those relating to the payment of poll taxes and evidence thereof for use at elections. Tax collectors are compelled to prepare and furnish poll tax lists to election boards for distribution to the precinct election officers. These lists constitute part of the election supplies and the number of ballots to be furnished each voting precinct is ascertained by reference thereto. Revised Statutes (1925), Articles 2975, 2984. In the case of municipal elections the election board is composed of the Mayor, and others, whose duty it is to obtain election supplies including the poll lists referred to and furnish them to election officers. Revised Statutes (1925), Articles 2997, 2996, 2992, 2993. Supplemental lists of the voters who have paid their poll taxes must be furnished "not less than four days prior to any * * * general election." Revised Statutes (1925), Article 2975. If all lists are not furnished the presiding judges of the various election precincts "at least three days before election" it is their duty to send for and procure them. Revised Statutes (1925), Article 2993. These poll lists are used on the day of election as a means of identifying those who appear for the purpose of voting. Describing the actual method of voting, Article 3005 declares that when the voter presents himself to vote he shall *"announce his name and the judge,*

*after comparing the appearance of the party with the description given in the certified list of qualified voters of the precinct made out by the County Collector, and being satisfied that it accords therewith, shall pronounce in audible voice the name of the voter and his number as given in the lists of qualified voters.*"   (Italics ours.)

It can serve no good purpose to make reference to the many statutes which show that the poll lists are one of the things which can not be dispensed with if a lawful election is to be held.  Since the statutes contemplate that the poll lists shall be used as an active and efficient aid towards securing the purity of the ballot they necessarily mean that *complete* poll lists shall be used.  That is to say, the lists should contain the names of every voter who may pay his poll tax prior to the close of January 31st each year.  We think it quite evident that the poll lists in a city like Austin could not properly be prepared and distributed and the statutes in other important respects be complied with between the hour of midnight January 31st and the hour of the morning when an election would be held on February 2nd.  But aside from what might be done the law is that the supplemental lists must be prepared at least four days before the election day and that the poll lists must be in the hands of the precinct judges at least three days before election day.  Revised Statutes (1925), Articles 2975, 2993.

Construing the various statutes bearing on the subject in the light of the Constitution shows conclusively that the provisions relating to poll tax lists are mandatory.  We think it too plain for argument that the general laws covering elections could not have been complied with in the City of Austin at an election on February 2nd, as provided for by the amendment to the City charter.  Since the conflict between the general statutes and this charter provision exists it follows that in so far as the amendment named February 2nd, 1925, as an election day it is void and the court erred in directing plaintiffs in error to give effect to that provision.  State Constitution, Article 11, Sec. 5; Vernon's Texas Statutes (1925), Article 1165.

It does not follow from this, however, that an election can not be had under the amended charter.  It is true the amendment designated February 2nd, 1925, as an election day, but, of course, that date was not a mandatory date, in effect no date because a void date.  It would be against common sense to say that the people enacting this amendment intended that unless the election could be held on February 2, 1925, then there should be no change in the city government, and the new plan of city management should fail.  It is apparent from the amend-

ments that the election of new councilmen, different in num-ber, with different and more limited duties, was the substance of the election, and not the void date named. The charter plainly contemplates that although some feature of the city election might not be provided for, either by the charter itself or the general laws of the State, the omission shall be supplied, and the election held. Section 4 of Article 17 of the Charter declares: "And in the event there should be any failure to provide for some 'feature' of the city elections, then the city council shall have the power to provide for such deficiency."

The date of a city election is certainly a *"feature"* of the election. There has been a failure of that *"feature,"* for the date named is, as we have seen, no date, or a void date. There having been a failure of that "feature" of the city election con-templated by the amendment, the quoted provisions of Section 4 of the amendment, Article 17, are to be given effect; and it is the duty of the city council, in compliance with the terms of the amendment and other relevant portions of the charter, to call an election, to be held at a date fixed by the council consistent with the general laws of the State. We are led to the conclusion that the date may be supplied under the charter provision quoted, not only by considering the charter amend-ments in the light of reason and common sense, but because this construction is in harmony with the public policy of the State as evidenced by various Acts of the Legislature.

The charter provisions of a number of cities illustrate the proposition that in the instance of the adoption of a new char-ter by vote, or the election of the first officers to begin the administration of a city government under a new charter or under an amended one, the substance of the legislative act order-ing the election is that the election shall be held, rather than the date thereof. Charters of Galveston, Gammel's Laws, Vol. 8, 1194; Vol. 9, pp. 488, 772, 773; Charter of El Paso (1889), Sec. 6, Gammel's Laws, Vol. 9, pp. 1261, 1262; Charter of San Antonio (1876), Sec. 194, Gammel's Laws, Vol. 8, p. 1258; Charter of Corpus Christi, Local and Special Laws, 31st Legis-lature, 350; Charter of Palestine, Sec. 10, Local and Special Laws, 31st Legislature, 586; Charter of Amarillo, Local and Special Laws, 31st Legislature, 859. See also Sec. 22, Article 15, Charter of Austin, Local and Special Laws, 31st Legislature, p. 43.

The view here expressed, to the effect that an election of officers may be held in the City of Austin although the charter day, February 2nd, 1925, has passed, is supported by the lead-

ing authorities. 38 Corpus Juris, pp. 721, 722; Dillon on Municipal Corporations, Vol. 4, Secs. 1495, 1496; 26 Cyc., p. 272; Kent's Commentaries (13th Ed.), Vol. 2, p. (296) 403; Board of Excise v. School District, 31 Okla., 553, Annotated Cases, 1913E, 369; McConihe v. State, 17 Fla., 238; State v. Young, 6 S. D., 406, 61 N. W., 195; State v. Davis, 76 W. Va., 587, 85 S. E., 779; Coles County v. Allison, 23 Ill., 437; People 1. Fairbury, 51 Ill., 152; State v. Smith, 22 Minn., 223.

In the event the city council declines or refuses to order the election, they may be required to do so by mandamus. Dillon on Municipal Corporations, Vol. 4, Secs. 1495, 1496; 38 Corpus Juris, pp. 721, 722; 26 Cyc., p. 272; 18 Ruling Case Law, 270; 9 Ruling Case Law, 1000; Sansom v. Mercer, 68 Texas, 488, 52 Am. St., 505, 5 S. W., 622. We cannot undertake to specify what date should be fixed by the City Council in the event they undertake to or are required to order the election. Revised Statutes (1925), Article 2975, states that the poll tax lists shall be delivered to the election boards before April 1st of each year. This article must be construed consistently with other provisions of the general laws. The first Tuesday in April is election day for cities chartered under the General Statutes. Revised Statutes (1925), Article 978. Therefore, the collector must deliver the lists in time for the elections to be held on that date. It may be that he could be required to deliver them at an earlier date, but just when and under what circumstances we could determine only as the facts of such a case were before us.

We are convinced, however, that the defendant in error can not maintain the present action. He predicated his right to relief solely upon the fact that he "is a citizen and tax payer of the City of Austin, Travis County, Texas, and is a duly qualified voter and entitled to vote in the election hereinafter referred to, *and brings this action in such capacity.*" (Italics ours.) He has no interest, financial or otherwise, peculiar to himself in the election. His interest is that of the general public only. That he cannot maintain the suit appears not only from the law as declared generally by the authorities of this State, but directly from the charter of the City of Austin as it exists under the amendments adopted and here under review. The special charter of the City at the time of its enactment by the Thirty-first Legislature, and up until the adoption of the amendments of August 8th, contained in Section 22 of Article 15, the provision quoted below. This Section made it the duty of the

Mayor, as soon as the Act took effect, to order a primary and general election at specified dates, and thereafter the regular biennial election on a date named.  The Section then declares: *"Whenever it is the duty of any officer or officers to order an election under the provisions of this Act, five or more qualified voters of the City of Austin may compel such officer or officers by mandamus to order the same."*  Acts of the 31st Legislature, p. 43.

This clause was placed in the Austin charter because the Legislature was of the opinion that without it voters, citizens, and tax payers of the City, under the statutes of the State and decisions of the courts, would not have the right to bring a mandamus suit such as this one, and because the Legislature desired that voters, citizens, and tax payers *should have that right*.  However, one of the amendments adopted by the people of Austin on August 8, 1925, expressly repealed this provision of the charter.  An elementary rule of construction is that when a law is amended, effect must be given to the amended law in a manner consistent with the amendment.  Wilson v. Vick, 93 Texas, 88, 53 S. W., 576; Burgess v. Hargrove, 64 Texas, 110; Jessee v. De Shong, 105 S. W., 1011; Fire Assn. v. Love, 101 Texas, 376, 382; San Antonio, etc., Ry. Co. v. S. W. Tel. Co., 93 Texas, 313, 49 L. R. A., 459, 77 Am. St., 884, 55 S. W., 117; Etter v. Mo. Pac. Ry. Co., 2 W. & W., Sec. 58; 25 Ruling Case Law, pp. 1050, 1051, Sec. 276; City and County of Denver v. New York Trust Co., 229 U. S., 123, 145, 57 L. Ed., 1101.

The amendment here had the direct effect and the undoubted purpose to take out of the charter that mandamus provision. There then can be given to this charter as thus amended but one meaning, and that is that five or more qualified voters *cannot* now maintain a mandamus suit to order an election.  Any other interpretation would completely ignore the will and intention of the legislative authority (the people who voted the amendment in this instance) when they took the provision out of the charter. It would, of course, be absurd to say that because the people took from the charter this clause they thereby intended that while five or more voters could not maintain a mandamus suit, that nevertheless *one*, the relator for instance, could do so.

We might well rest our opinion on this question on the construction of the charter alone, but there is still another fundamental reason why the relator cannot maintain this action.  It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justi-

ciable interest in the subject matter in litigation, either in his own right or in a representative capacity. State of Texas v. Farmers Loan & Trust Co., 81 Texas, 530, 545, 11 S. W., 60, and other cases cited below. Whatever may be the rule in other jurisdictions there can be no doubt that in Texas an action relating to elections or other matters of law enforcement, not involving questions of taxation or unlawful expenditure of public funds, can not be maintained by a relator or plaintiff whose interest is only that of the public generally, in the absence of a valid statute authorizing the suit. City of San Antonio v. Strumberg, 70 Texas, 366, 7 S. W., 745; Lewright v. Love, 95 Texas, 157, 160, 65 S. W., 1089; Harrell v. Lynch, 65 Texas, 146, 157; Worsham v. Richards, 46 Texas, 446; Ex Parte Towles, 48 Texas, 443, 422; Caruthers v. Harnett, 67 Texas, 127, 131, 2 S. W., 523; Hulse v. Powell, 21 Texas Civil Appeals, 471, 51 S. W., 862; McDonald v. Lyon, 43 Texas Civil Appeals, 484, 487, 95 S. W., 67; Staples v. King, 112 Texas, 61, 69, 245 S. W., 639; Dickson v. Strickland, 114 Texas, 177, 196, 198, 265 S. W., 1012; Harding v. Commissioner's Court, 95 Texas, 174, 66 S. W., 44; Norton v. Alexander, 28 Texas Civil Appeals, 466, 67 S. W., 787; 18 Ruling Case Law, 326, Section 274; Bobbett v. State, 10 Kan., 9, 15, 16; Linden v. Board of Supervisors, 45 California, 6; O'Brien v. Board of Alderman, 18 R. I., 113, 25 Atl., 914; Bryant v. Logan, 56 W. Va., 141, 3 Annotated Cases, 1011, and many cases in the notes, page 1013. Andrews v. City of New South Haven, 187 Mich., 294, L. R. A., 1916A, page 908, Ann. Cas. 1918B, 100; Stegmaier, v. Jones, 203 Penn., 47; Delbridge v. Green, 29 Mich., 121; Smith v. Mayor of Saginaw, 81 Mich., 123, 45 N. W., 964; Pearsons v. Ranlett, 110 Mass., 118, 126; Sanger v. County Commissioners, 25 Me., 291; People v. Regents of University, 4 Mich., 98; Wellington et al., Petitioners, 16 Pick. (Mass.) 87, 26 American Decisions, 631, 643. An extensive review of the Texas cases is not practicable because of the length of the opinion, nor is it necessary. The cases of Staples v. King and Dickson v. Strickland both involved the election laws, are late cases and in effect rule the instant case. In Dickson v. Strickland, supra, we re-iterated what had been declared in the Staples case, saying:

"It is not claimed that appellant Dickson has any interest in the subject-matter of this suit other than to subserve the public interest. His lack of special interest is fatal to his capacity to maintain his suit in the absence of a valid statute, authorizing him to sue. San Antonio v. Strumberg, 70 Texas, 366, 7 S. W.,

754. Again, as plainly declared by this Court in Staples v. State, 112 Texas, 68, 245 S. W., 641. 'Where the suit is for the benefit of the public at large, and no citizen is affected differently from all other citizens, the State as an agent of all is properly interested for the benefit of all citizens;' and, such a suit can only be maintained by those authorized under the Constitution to protect public rights and interests." 114, Texas, 196, 197.

The case of Bobbett v. State, 10 Kansas, 9, is directly in point, and has been approved by this Court. Sansom v. Mercer, 68 Texas, 488, 493, 2 Am. St., 505, 5 S. W., 62.

The cases of Sansom v. Mercer, just cited, Kimberly v. Morris, 87 Texas, 637, 31 S. W., 808, and Boynton v. Brown (Civil Appeals) 164 S. W., 893, are not in point in favor of defendant in error. In each of these cases there was a statute conferring upon certain petitioners the right to have an election ordered. Mandamus was awarded to enforce this special statutory right. Other Texas cases relied on by defendant in error are not in point. In Porter v. State, 78 Texas, 591, 14 S. W., 794, the State was a party. The cases of McLaughlin v. Smith (Civil Appeals) 140 S. W., 248; Ogden v. Barbee, 103 Texas, 449, 129 S. W., 602; Dubose v. Woods (Civil Appeals) 162 S. W., 3; and Terrell v. Middleton, 187 S. W., 367, all involved in some form the questions of taxation or the unlawful expenditure of public fund and were, therefore, maintainable under the generally accepted rule. But that rule, being one of property interest, has no application to this case.

None of these cases support the position of defendant in error. In Kimberly v. Morris a question of taxation was also involved, and the Court expressly declined to determine the broad position relied on by relator.

What we have said is in accord with the established legislative policy of the State, which has from time to time, when thought necessary, declared by statute when and under what circumstances a private citizen could bring suit in the interest of the public, thereby evidencing a Legislative determination that without such enactments the citizen could not maintain actions of that character. Revised Statutes (1925), Articles 3069, 3071, 3173, 4667, 4668, 6011; Charter of Austin, Acts of 31st Legislature, 43; Charter of Palestine, Acts, 31st Legislature, 586; Charter of Corpus Christi, Acts 31st Legislature, 345; Charter of Gainesville, Acts, 31st Legislature, 534; Charter of Greenville, Acts, 31st Legislature, 628. Perhaps there are other statutes— we have made no effort to collect them all. These suffice, how-

ever, to show the legislative policy as to both general and local laws.

Under the only admissible construction of the charter as amended, as well as under the authorities cited, defendant in error can not maintain this suit.

However, the people of the City are not without remedy for the reason that the State, the guardian and protector of all public rights, can maintain a mandamus suit for redress of the wrongs complained of, if any exist. The rule is an elementary one that the State may maintain an action to prevent an abuse of power by public officers, and in general protect the interest of the people at large in matters in which they can not act for themselves. Staples v. State, 112 Texas, 61, 68, 245 S. W., 639; Kansas v. Colorado, 185 U. S., 125, 142, 46 L. Ed., 838; 36 Cyc., 908; 25 R. C. L., 408; 2 R. C. L., 918; Missouri v. Illinois, 180 U. S., 208, 45 L. Ed., 497; State v. Metschan, 32 Ore., 372, 41 L. R. A., 692, 46 Pac., 791; People v. Ingersoll, 58 N. Y., 1, 17 Am. Rep., 178, 185, 186; State v. Ohio Oil Co., 150 Ind., 21, 47 L. R. A., 627, 631.

That the State has a justiciable "interest" in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt. Municipal corporations are created for the exercise of certain functions of government. They have a two-fold character, one governmental and the other private, and in so far as their character is governmental, they are agencies of the State and subject to State control. 19 R. C. L., page 697, Sec. 9; page 730, Sec. 36, page 739, Sec. 45, page 749, Sec. 54, page 751, Sec. 56, page 751; Dillon on Municipal Corporations (5th Ed.) Vol. 1, Section 109, page 182, and Sections 103, 104, 105, 106, 108, 115 and 117; Trent v. Randolph, 130 S. W., 737, 738; Harris County v. Stewart, 91 Texas, 133, 41 S. W., 650; Blessing v. Galveston, 42 Texas, 461.

The Mayor of a city is a magistrate, and its police officers are state officers. Code of Criminal Procedure (1925), Articles 33, 34, 35, 36 to 40, 72 to 93, and 95 to 103; Ex Parte Tracey, 93 S. W., 540; Whitfield v. City of Paris, 84 Texas, 431, 15 L. R. A., 783, 31 Am. St., 69, 19 S. W., 566; Givens v. City of Paris, 5 Texas Civ. App., 705, 24 S. W., 974; Dillon on Municipal Corporations, Vol. 1, Sections 103 and 390. See also Shanewerk v. City of Fort Worth, 11 Texas Civ. App., 271, 32 S. W., 918.

City officers may be appointed by an agency selected by the Governor. Ex Parte Tracey, supra; Brown v. Galveston, 97 Texas 1, 75 S. W., 488.

Corporation Courts exercise State judicial power, and this power runs in the name of the State. Code Criminal Procedure, Articles 62, 867; Harris County v. Stewart, 91 Texas, 133, 41 S. W., 650; Blessing v. Galveston, 42 Texas, 641; Johnson v. Hanscom, 90 Texas, 321, 37 S. W., 601, 38 S. W., 761.

Other interests of the State in its municipalities, such as schools, public health, etc., might be enumerated. 19 Ruling Case Law, 760 to 767.

It is plain from the foregoing that it is a matter of obvious interest to the State that the agency selected by it for the various public purposes and functions involved should conduct and maintain itself in the manner prescribed by law; that officers, upon whom rests the duty of administering the franchises of government confided to the city, and acting as the State's agents in custody of public property, and in the performance of the State's duties as *parens patriae,* trustee, guardian, or representative of all the people, should be regularly selected and installed in office in a lawful manner. See the cases of State v. DeGress, 53 Texas, 387, and State v. DeGress, 72 Texas, 242, 11 S. W., 1029.

Aside from the above, under the common law, by which our Constitution and Statutes are to be interpreted, the State could forfeit municipal charters for misconduct of their officers. Dillon on Municipal Corporations, Vol. 4, Sec. 1558; Vol. 1, Sec. 330. There are cases where this may be done. Revised Statutes (1911), Article 798. However, the less destructive remedies of mandamus and proceedings in equity are more generally employed. Dillon on Municipal Corporations, Vol. 4, Sections 1480, 1483, 1484, 1495, 1496, 1570, 1573, 1576, 1587.

On the whole it is evident that not only for the reasons we have given predicated upon our statutes and from the status of a municipal corporation as an agency of the State, but under the ancient and modern rules of the common law, the State has sufficient interest to and can maintain an action to require municipal officers to call an election to fill their own offices. This, too, is the practice both in this country and in England. Dillon on Municipal Corporations, Vol. 4 (5th Ed.), Sections 1495, 1496.

Since the State can bring a mandamus suit similar in purpose to the one before us, it is elementary that the Attorney General has the power to institute such an action. Queen Ins. Co. v. State, 22 S. W., 1048, 1052; State v. Loan and Trust Company, 81 Texas, 530, 551, 17 S. W., 60; Ruling Case Law, Vol. 2, pages 916, 917, 918, 919, 924, 925; Corpus Juris, Vol. 6, pages 809, 810, and Vol. 38, page 837; Ex Parte Young, 209 U. S., 123, 52

L. Ed., 714, 13 L. R. A. (N. S.) 932, 14 Ann. cases, 764; State v. Robinson, 101 Minn., 277, 20 L. R. A. (N! S.) 1127, 1132; State v. Ehrlick, 65 W. Va., 700, 23 L. R. A. (N. S.), 692, 694; Respass v. Boro, 131 Ky., 807, 21 L. R. A. (N. S.), 836, 838; Dillon on Municipal Corporations, Vol. 4, Sections 1495, 1496, 1527, 1577, 1587. See also State v. DeGress, 72 Texas, 242, 11 S. W., 1029.

We shall not at this time determine whether or not the County Attorney can, on his accord, institute, in the name of the State, such a suit as the present one. It is certain that when once lawfully instituted he can, under the express language of the Constitution, represent the State. State Constitution, Article 5, Section 19. It is clear, however, that the County Attorney can, under the direction of the Attorney General, institute a suit of this character in the name of the State.

Plaintiffs in error present many assignments attacking the validity of various amendments to the charter as adopted. We do not regard the questions raised as involved in this case, and, therefore, do not discuss them. We have intended to determine only the questions actually decided in this opinion.

From what we have said it is apparent that the District Court erred, not only in awarding the mandamus, but in permitting the defendant in error to maintain this suit; and that the Court of Civil Appeals likewise erred as pointed out in the opinion. In view of the conclusions reached, the judgments of the Court of Civil Appeals and District Court must be reversed and the suit dismissed, and it is so ordered.