Justice WILLETT,
joined by Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON, dissenting.
I would not treat this case as moot merely because Yarbrough received tenure. Her suit challenging the lawfulness of TAMUK’s grievance system, filed after she obtained tenure, may (or may not) in substance be an invalid ultra vires claim. But that is the fateful unresolved question that dominates the parties’ briefing and deserves our substantive focus. If Yar-brough’s claim is jurisdictionally barred, it is because of immunity, not mootness.
Tenure is an important milestone in an academic career, but it does not solely determine the arc of that career. Yar-brough’s alleged injury lies in the negative evaluation itself and its ongoing consequences. The evaluation creates a permanent record — a record revisited annually. According to the Faculty Handbook:
Each faculty member, whether tenured, probationary, or non-tenure track, is evaluated yearly for purposes of reappointment (in the cases of probationary and non-tenure track faculty), promotion in rank, possible reassignment, and discretionary salary increases.... Written narratives are part of the evaluation process and are used when advising faculty of the outcomes of their yearly performance evaluations....
... The results of such evaluation may be used along with other information in decisions regarding retention, promotion, and discretionary salary increases.
These provisions indicate that the narrative of which Yarbrough complains could impact decisions other than tenure, and long after tenure has been granted. Given these ongoing effects, Yarbrough continues to maintain “a justiciable interest in the subject matter in litigation.”[1] The negative narrative is a mark on her personnel record that, as far as this record indicates, lasts forever.[2] TAMUK’s own handbook states that the unflattering narrative remains in her personnel file and may be considered in making future decisions regarding retention, reassignment, promotion, and salary.
The United States Supreme Court has generally recognized that a claim is not moot if the plaintiff is subject to “further penalties or disabilities” or “collateral legal disadvantages” in the future.[3] In Carrillo v. State,[4] we held that a stigmatie injury that threatened to cause another future injury was sufficient to demonstrate a live controversy.[5] Yarbrough’s eontro- *293 versy remains live because, under general mootness principles, she retains a “legally cognizable interest in the outcome”[6] and suffers “continuing, present adverse effects,” [7] namely the ongoing impact of the narrative itself. It is the continuing role of the narrative, not Yarbrough’s difficult road in obtaining tenure or abstract objection to one day being resubjected to TA-MUK’s grievance policy, that makes this case non-moot.
Mootness doctrine does not always lend itself to precise line drawing,[8] and I would not apply it here. Today’s decision is especially unsatisfying because this case raises important immunity issues worthy of Supreme Court clarification; it merits reaching the merits. Dismissal for want of jurisdiction may well be the correct disposition, but if so, it should be immunity-based at the end of the day, not mootness-based at the beginning.

. Yett v. Cook, 115 Tex. 205, 281 S.W. 837, 841 (1926); see also Williams v. Lara, 52 S.W.3d 171, 184 (Tex.2001).

. Even if receiving tenure were Yarbrough’s primary concern, she would maintain a claim for relief because the evaluation’s ramifications persist. Powell v. McCormack, 395 U.S. 486, 499, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (rejecting theory that "mootness of a ’primary’ claim requires a conclusion that all 'secondary’ claims are moot”).

. See Sibron v. New York, 392 U.S. 40, 53-58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (finding that a criminal case is moot, even after the sentence has been served, only if there is "no possibility” of collateral consequences).

. 480 S.W.2d 612, 616-17 (Tex.1972).

. In Carrillo, we held that a juvenile could maintain an appeal in a delinquency proceeding — even though he had served his sentence, the matter was confidential, and statutes provided that "no adjudication should impose any civil disability, that the child shall not be deemed a criminal by reason of being adjudicated a juvenile delinquent, and that the adjudication should not be deemed to be a convic *293 tion.” Id. at 617. Despite these protections, the Court noted that the statutes did not specifically address whether such an adjudication could affect the minor’s ability to enter into a profession or serve in the military, and that it was possible that the conviction could later be publicized if the minor committed a crime after reaching majority. Id.

. Murphy v. Hunt, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ("In general a case becomes moot when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.”) (citations and quotation marks omitted).

. See O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.”).

. See U.S. Parole Comm’n v. Geraghty, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (recognizing the "flexible character” of the Court’s mootness jurisprudence).