# Merchants National Bank of La-Fayette v. M. C. McNaron, *et al.*

## *Assumpsit.*

### (Decided April 13, 1911.   55 South. 204.)

*Courts; County Seat; Place of Holdings; Change; Statutes.*— The Act of August 18, 1909, (Acts 1909, p. 14) is not violative of sections 41 or 104, subd. 11, Constitution 1901, when considered in connection with sections 141 and 144.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by the Merchants' National Bank of La Fayette, Ind., against Thomas B. McNaron and others, upon a promissory note. Judgment for defendants, and plaintiff appeals. Affirmed.

The summons commanded that the defendants appear at the next term of the circuit court to be held in said county of Marshall, at Guntersville, Ala. The plea was in abatement to the action, that all the defendants resided in precinct No. 4, in Marshall county, at the commencement of this suit and now, and that the cause of action sued on arose in said precinct No. 4, in Marshall county, and the defendants make oath that this plea is true. Demurrers were interposed to the plea, setting up that it shows on its face that at the time of the filing of the suit the defendants resided in Marshall county, and that no other court had jurisdiction of the cause. These demurrers were overruled, and issue was joined upon the plea, which was found in favor of the defendants; the Legislature having, before the bringing of the suit, established a branch of the circuit court at Albertville, in said county, and given it jurisdiction of causes arising in certain portions of the county, as will be seen by reference to the act cited in the opinion.

JOHN A. LUSK, for appellant. It is the contention of the appellant that this act is void as violative of Section 41 and Section 104, Subd. 11, Constitution 1901. First, the act did not provide for a submission of the question to the qualified voters.—*Matkin v. Marengo County,* 137 Ala. 165. Change or remove will be found defined in 2 Words and Phrases, page 1051, 20 N. W. 401; 1 Grant 75; 49 South. 809. As to what is the county seat as used in said Constitution, see 11 Cyc. and the citations thereunder.—21 Ency. P. & P. 605; 7 A. & E. Ency. Law, 1012; 113 N. Y. Sup. 627. As to what the court house means, see *Harris v. State,* 18 South. 387. The court judicially knows that the county seat of Marshall county is at Guntersville, and the courts have no authority to meet anywhere than at the county seat.—*Bell v. Jarvis,* 107 N. W. 547; 11 Pac. 199; 36 Pac. 218.

E. O. McCORD, for appellee. The act referred to is not violative of either section 41 or 104, Subd. 11, Constitution 1901.—Sections 141 and 144, Constitution 1901; section 3230, Code 1907; *Matkins v. Marengo County,* 137 Ala. 165; *Whallon v. Circuit Judge,* 51 Mich. 503.

McCLELLAN, J.—The chief question propounded by this appeal is, Is the act approved August 18, 1909 (Acts Sp. Sess. 1909, pp. 14-17), wherein it was provided, without sanction of the ballot, that two terms of each year of the circuit court of Marshall county shall be held at Albertville therein, fixing its jurisdiction and regulating its procedure, invalid because violative of sections 41 and 104, subd. 11, of the Constitution of 1901?

Section 41 reads: "No courthouse or county site shall be removed (b) except by a majority vote of the

qualified electors of said county, voting at an election
held for such purpose, and when an election has once
been held no other election shall be held for such pur-
pose until the expiration of four years; provided, that
the county site of Shelby county shall remain at Co-
lumbiana, unless removed by a vote of the people, as
provided for in an act entitled, 'An act to provide for
the permanent location of the county site of Shelby
county, Alabama, by a vote of the qualified electors of
said county,' approved the 9th day of February, 1899,
and the act amendatory thereof, approved the 20th day
of February, 1899, or by an election held under the pro-
visions of this article."

Section 104, as here involved, reads: "The Legisla-
ture shall not pass a special or local law in any of the
following cases: * * * (11) Changing or locating
a county seat," etc.

The substance of the argument, pressed at the bar
and in briefs, is that the constitutional terms "court-
house" and "county site" of necessity comprehend "seat
of justice" as a county matter, and that therefore the
constitutional restriction against the removal of a
*courthouse* or *county site,* without taking the sense of
the electorate of the county on the question of removal,
renders invalid the act under consideration.

As the summary of the argument indicates, there is
no express provision in the organic law requiring the
circuit courts of the several counties to be held at the
respective courthouses or county sites of the state. Nor
is there any express constitutional declaration that the
terms "courthouse" and "county site" embrace the
"seat of justice" for the county. So that, unless the
terms "courthouse" and "county site" include the limi-
tation with respect to the seat of county justice, as the
circuit courts are the means of its dispensation, the act,
as now questioned, is not invalid.

As we judicially know, long before the Constitution of 1901 was adopted, circuit and chancery courts of several counties were authorized, by statute, to be held, and were held, in places other than county sites.— *Matkin v. Marengo County*, 137 Ala. 155, 163, 34 South. 171. This is notably true in the counties of Barbour and Blount. The makers of the organic law were cognizant of this public fact; and, being so, it is not reasonably conceivable that such a status was intended to be constitutionally disturbed, or its extension to other counties inhibited, by the provision so concluding by implication—by equivocal inference merely. It would seem certain that express language would have been employed, had such been the intent of the Constitution makers. Instead of so expressly prescribing the place for the holding of circuit courts, the makers of the organic law, by section 144, were content with providing that a circuit court should be held "in each county in the state at least twice a year." Had the purpose obtained to fix the county site as the sole seat of justice for the counties, through the circuit courts, it would have, we think, found its most natural place of unequivocal expression, in this connection, in section 144. The general prescription that the circuit courts should be held *in each county*, without designating the place therefor as at the county site, strongly negatives the existence of an intent to deny to the legislative branch of the government the power, long previously exercised, to authorize the holding of the circuit courts *in other places* "in each county."

So far as we are now advised, the only express constitutional prescription of the *place* at which any of our courts must be held is the provision to that effect, for this court, in section 141.—See *State v. Tally*, 102 Ala. 25, 33, 15 South. 722. There (section 141) it is pre-

scribed that the Supreme Court shall be held "at the seat of government," unless that place should "become dangerous from any cause." This constitutional requirement in respect of the place of sitting of this court, and the omission of a similar restriction to county sites of the circuit courts, can but impress the interpreter of the Constitution, in this regard, as evincing a want of purpose to forbid to the Legislature the exercise of the discretion expressed in the act under consideration.

In *Matkin v. Marengo County, supra,* the terms "courthouse" and "county site" were taken to be, in ordinary parlance synonymous, and to signify "seat of government"—a signification the same as that to be found in state reference in section 141, in prescribing the place for holding this court. This accepted judicial construction of those terms in section 41 emphasizes the constitutional intent to prescribe as to this court, and to omit prescription as to the circuit courts. If, as to the latter courts, the organic law had provided that they be held at the *county sites,* the limitation of the Legislature would have been as it is with respect to the place of sitting of this court.

The Constitution of 1868, containing, at article 6, § 6, practically identical provisions with a part of section 144 of the Constitution of 1901, was noticed in *Fulmore v. Brady,* 44 Ala. 218. It was there said that "two terms of the circuit court are required to be held in each county annually (Const. art. 6, d 6), and *the time and place appointed.*" (Italics supplied.) It will be seen that the *place* appointed was "in each county," not necessarily and exclusively at the *courthouse* or county site of each county.

In *Whallon v. Gridley,* 51 Mich. 503, 16 N. W. 876, the question here under consideration was, in sub-

stance, presented. While the antecedent statutory status there involved has not, in all respects, a counterpart with us, yet in the main they are similar. There the court took and approved the view that like constitutional provisions did not forbid sittings of the circuit courts at a place in the county, other than the county site. The reasoning of the opinion appeals to us as sound, and it is accepted as justly influential upon the inquiry in hand. We do not take *Coulter v. County of Routt*, 9 Colo. 258, 11 Pac. 199, 203, as impairing the soundness of *Whallon v. Ingham, supra.*

The argument that approval of this act, as assailed, must logically result in the upholding of future acts, whereby all other county governmental agencies, one or more at the time, may be placed for exercise of authority elsewhere than at the county sites, and so, without the sanction of the ballot, effect the *removal or change of courthouses or county sites,* is we think, but the suggestion of mere apprehension of an abuse, by the Legislature, of a sound construction of our organic law. If the removal of a courthouse or county site was attempted to be accomplished by subterfuge, whereby the mere building was left a tenantless relic of a once-established seat of county government, there would doubtless be no hesitancy in condemning such an act or acts as a vain effort at evasion of the restrictions of sections 41 and 104 of the Constitution. We do not think the apprehension well-founded.

Doubtless, for the convenience of the people of the county, this act requires that the circuit court be also held at Albertville, in that county. Territorially jurisdiction over a part of the county is established for the court required to be held at Albertville. To this place of sitting must causes arising in that jurisdiction be returned for trial. As appears from this act, the

circuit court of Marshall county is not affected. It is required to meet at two different places in the county. The county site is still a place for its convention, notwithstanding it shall convene at another place therein as well.

Upon the foregoing considerations, it must be held that the objections, before indicated, to the validity of the act in hand are not well taken. Accordingly the demurrer to the plea in abatement was properly overruled.

The issue being determined by the jury in favor of the plea, the judgment entry recites that the plaintiff declined to plead further; whereupon judgment for defendants, on the plea in abatement, was rendered. There was no other alternative left the court. The proper judgment was entered.

Affirmed.

SIMPSON, MAYFIELD, and SOMERVILLE, JJ., concur.