### RALLS et al. v. PARISH.

(Court of Civil Appeals of Texas. Amarillo. Jan. 27, 1912.)†

1. COUNTIES (§ 35*)—"COUNTY SEAT."

Under Sayles' Ann. Civ. St. 1897, art. 811, providing that no county seat situated within five miles of the geographical center of the county shall be removed, except by a two-thirds vote of the electors of the county voting thereon, article 819, providing that the county commissioners' court of each county, as soon as practicable after the establishment of the county seat, or its removal from one place to another, shall provide a courthouse and jail and offices for the county officers at the county seat, and article 1140, providing that clerks of the county courts shall have their offices at the county seat, and, when they do not reside there, shall have a deputy residing there, the "county seat" does not consist merely of the courthouse, jail, and other public buildings, but consists of the town plot of the town designated as the county seat at the time it is so designated.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 38–45; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 2, p. 1667; vol. 8, p. 7621.]

2. COUNTIES (§ 35*)—COUNTY SEAT—REMOVAL—"WITHIN FIVE MILES."

A county seat is "within five miles" of the geographical center of the county, within Sayles' Ann. Civ. St. 1897, art. 811, providing that, when the county seat is within five miles of the geographical center, it shall not be removed, except by a two-thirds vote of the elec-

---

tors of the county voting on the subject, where any part of the county seat would be included within a circumference described around such center with a five-mile radius, although the whole of the county seat is not within such circumference.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 38–45; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 8, pp. 7497–7502.]

Appeal from District Court, Crosby County; W. R. Spencer, Judge.

Action by John R. Ralls and others against Pink L. Parish. From the judgment, plaintiffs appeal. Reversed and rendered.

For answer to questions certified to Supreme Court, see 147 S. W. 564.

Cooper, Merrill & Lumpkin, of Amarillo, for appellants. J. W. Burton and Walter Cranford, both of Crosbyton, and L. W. Dalton, of Plainview, for appellee.

HALL, J. This suit was instituted by the appellants, Jno. R. Ralls, R. L. Travis, and R. R. Travis, against the appellee, Pink L. Parish, who is county judge of Crosby county, for the purpose of contesting the result of an election held in said county on the 17th day of September, 1910, to determine whether the county seat of said county should be removed from the town of Emma, where it was then located, to the town of Crosbyton, or to the town of Ralls.

On account of certain injunction proceedings instituted by the citizens of the town of Emma, appellee did not declare the result of the election until the 8th day of February, 1911, at which time he declared the result to have been in favor of the removal of the county seat from Emma to Crosbyton, basing his declaration upon his finding that, according to the returns, Crosbyton had received 199 votes and Emma 120, and that the town of Crosbyton is within five miles of the geographical center of Crosby county, and that Emma is more than five miles from such center. Appellants' brief contains 248 pages, submitting their cause under 64 assignments of error. Appellee's brief is almost as voluminous. The transcript and statement of facts are in proportion. In the disposition we make of the case, it is unnecessary to consider the assignments, or even a small per cent. of them, in detail, or to refer at great length to the record.

On September 18, 1891, W. L. McGaughey, then Commissioner of the General Land Office, in accordance with law, made his certificate, designating the geographical center of Crosby county to be near the southeast corner of survey No. 3, block 1, International & Great Northern Railway Company, and such certificate was duly recorded in the deed records of said county.

On August 26, 1910, the present Commissioner, upon request of appellee, caused one of his employés, the chief draftsman of the General Land Office, to make up and forward to appellee a second certificate, showing the center of such county to be at a point in survey No. 2, block 1, International & Great Northern Railway Company, 54¾ degrees east from the northwest corner of said section several hundred varas east of the center, as fixed by the former certificate, issued by W. L. McGaughey, Commissioner, which certificate appellee had recorded. In declaring the result of the election, appellee relied upon the last-named certificate.

[1] Article 811, Sayles' Civil Statutes, is: "Hereafter no county seat situated within five miles of the geographical center of any county shall be removed except by a vote of two-thirds of all the electors in said county voting on the subject. Nor shall any county seat be removed from a point more than five miles from the geographical center of any county to any other point more than five miles from such center, nor from a point within five miles of the geographical center to any other point within five miles of such center, except by a two-thirds vote of all the electors in said county voting on the subject." The article in question also provides that "the center of the county is to be determined by certificate from the Commissioner of the General Land Office, in the manner hereinafter set forth."

Article 819, Id., provides: "It shall be the duty of the county commissioners' court of each county, as soon as practicable after the establishment of a county seat, or after its removal from one place to another, to provide a courthouse and jail for the county and offices for the county officers at such county seat and keep the same in good repair."

Article 1140, Id., is: "The several clerks of the county court shall keep their offices at the county seat of their respective counties, and when the clerk does not reside at such county seat, he shall have a deputy or deputies residing there."

The uncontroverted testimony in this case shows that Emma was established as the county seat of Crosby county in 1891, at which time, as the result of an election held for that purpose, the county seat was removed from the town of Estacado, and that the original town of Emma was plotted, prior to said election, so as to cover practically all of survey No. 2, H. & O. B. R. R. Co. surveys, in said county; that the courthouse was erected upon the public square in the center of said town plot. It is further shown by uncontradicted testimony that the original town of Crosbyton was plotted upon and covers the northwest quarter of survey No. 3, T. W. N. G. R. R. Co., in said county. It is further shown by the testimony of witnesses for both appellants and appellee that if a circumference is described with a five-

mile radius, taking the geographical center of the county as fixed by either of the certificates of the Land Commissioner, mentioned above, that either circumference so described will include a considerable portion of the original town of Emma, and all, or practically all, of the original town of Crosbyton. But under the last certificate the courthouse and jail as they now stand, in the town of Emma, and all the residences, will be beyond the limits of the circumference so described. It is further shown that Crosbyton did not receive two-thirds of all the votes cast in that election.

We think, under these facts, we can dispose of this appeal without considering all of the assignments relating to the legality of votes, and, in fact, any other question presented to us in the briefs.

Appellee contends that by "county seat" is meant the courthouse, jail, and other public buildings of the county. We cannot assent to this contention. We have quoted the above articles of the statute, requiring the county clerk or his deputy to reside at the county seat, and providing that the commissioners' court, after the establishment of a county seat, or after its removal from one place to another, provide a courthouse and jail for the county, and offices for the county officers, at such county seat, to show the fallacy of such contention. It was never contemplated by the Legislature that the clerk or his deputy should reside in either the courthouse or jail; and it is clear that the county seat may be established as such before the erection of either of said public buildings. In Williams v. Reutzel, 60 Ark. 155, 29 S. W. 374, it is said: "In every county of this state there is, and must be, a county seat. At it the county court is required to erect a good and sufficient courthouse and jail. The name 'county seat' indicates the object of its creation. It is defined by the Century Dictionary: 'The seat of government of a county; the town in which the county and other courts are held and where the county officers perform their functions.'" Also, in Re Allison, 13 Colo. 525, 22 Pac. 820, 10 L. R. A. 790, 16 Am. St. Rep. 224: "The term 'county seat,' in common parlance, applied to a particular town or city, simply designates the town or city where the seat of the county government is for the time being." Also, in Marengo County v. Matkin, 134 Ala. 275, 32 South. 669: "Ordinarily the term 'county seat' applies, not merely to the lot and buildings used for transacting public business, but to the territory occupied by such town as may be designated as the county seat. A county seat is not necessarily coextensive with the town of its location. It is not identical with the municipality, and does not move by force of the latter's expansion. Thus, where an act of the Legislature selects a certain town as county seat, the board of county commis-

sioners had no authority to move the county courthouse to a portion of the town not embraced within its limits when the act was passed, notwithstanding that act of adding territory to the town was passed after the locating act, and that the actual establishment of the courthouse occurred after the enlargement of the town." We think it is clear from the language of the statute and from the authorities cited that the original town plot of the town of Emma, as it existed at the time the county seat was changed from Estacado to Emma, constituted the county seat of Crosby county at the time of the election in question.

[2] Justice Ramsey, in Bradford v. Robison (Tex. Sup.) 141 S. W. 769, in construing section 6d of the Acts of the Thirtieth Legislature 1907, p. 494, stated: "It is admitted that the home tract is reached within less than five miles of the tract sought to be purchased; and it is also conceded that, beginning at the point of the home section nearest the section sought to be bought, it is less than five miles to section 766, but that a circumference described from the nearest point of the home section with a radius of five miles will include but a small portion of the land sought to be acquired. What, then, is the meaning of the statute? Does it mean that the land to be purchased must be wholly within a radius of five miles, or that the land to be purchased must not be more than five miles from the home section? We think a fair construction of the statute must lead to the conclusion that, with a view of protecting the state from purchases by speculators, and thus retarding the growth and development of the state, it was intended to make certain that such purchases were on account of, and to be used by, actual settlers owning property in the vicinity; and, having in mind this purpose, we ought not to adopt a strained or technical construction of the statute as to an adjacent landowner. The land purchased is within (or distance from) five miles from the home section, and relator, having adopted all of the preceding steps, is entitled to acquire same." It appears from the plat on page 77, vol. 141, and referred to in the opinion, that only a small per cent. of the tract claimed as additional land, and to be "within five miles" of the home tract, is so included. It will also be observed from the reading of the section of the act referred to that the phrase "within five miles" is identical with that used in the articles of the statute and the Constitution, relating to the removal of county seats; and, since a part of the town of Emma is included within a circumference described, with a five-mile radius, with either of the designated geographical centers as center thereof, we conclude that it required two-thirds of those voting at said election to move the county seat from Emma to Crosbyton   Since Cros-

byton did not receive two-thirds of all the votes cast, it follows that the judgment of the lower court must be reversed and here rendered for the appellants; and it is so ordered.