**HARRIS et al. v. ELDER et al. (two cases).**

**Nos. 2650, 2657.**

Court of Civil Appeals of Texas. El Paso.

April 21, 1932.

Rehearing Denied May 12, 1932.

Mead & Metcalfe, of Marfa, W. Van Sickle, of Alpine, and R. B. Ridgway, of San Angelo, for appellants.

Brian Montague, of Del Rio, Joe Turner, of McCamey, Kerr & Gayer, of San Angelo, and Hubert A. Forman, County Attorney, of Rankin, for appellees.

HIGGINS, J.

This is an injunction suit arising out of a county seat election in Upton county held April 25, 1931. The parties will be designated as they were in the trial court.

The plaintiffs are Dave Elder, Pearl Rankin, and Rufus Windham, who sue individually as property owners, taxpayers, citizens, and voters of Upton county and in their respective official capacities as members of and constituting a majority of the members of the commissioners' court of Upton county; also various persons who sue as property owners, taxpayers and voters of the county; also a private corporation domiciled in Tom Green county, but alleged to be a property owner and taxpayer of Upton county.

The defendants are Hon. Maburn L. Harris, county judge of Upton county, Tex., James S. Key, a member of the commissioners' court of said county, J. C. Jackson, county and district clerk of Upton county, W. C. Fowler, sheriff and tax collector of the county, H. E. Hays, county treasurer, and R. N. Stephenson, tax assessor of the county.

The county of Upton, the city of Rankin, the state of Texas, and the commissioners' court of Upton county intervened in the suit and adopted the allegations and prayer for relief contained in the plaintiffs' petition. This petition in intervention is signed by Hon. Hubert A. Forman, county attorney, and the private counsel whose names are signed to the plaintiffs' petition.

. The nature of the relief sought is shown by the judgment rendered as follows:

"The court after considering the pleadings, evidence and argument of counsel, is of the opinion and so finds, that the County Seat election held in Upton County, Texas, on September 21, 1929, was in all things legal and by reason of same the election held in said County on April 25, 1931, was unauthorized and was void and for these reasons, without the necessity of determining others, the plaintiffs and intervenors, are entitled to a permanent injunction as prayed for in this suit.

"It is therefore ordered, adjudged and decreed by the Court that the defendant Mayburn L. Harris, County Judge of Upton County, Texas, the defendant, W. C. Fowler, Sheriff of Upton County, Texas, and James S. Key, .Commissioner of said County, J: C. Jackson, District and County Clerk, R. N.

. See, also, 38 S.W.(2d) 352.

Stephenson, County Assessor and H. E. Hays, County Treasurer, be, and they are hereby permanently enjoined from taking any steps or doing any acts whatever carrying into effect or attempting to carry into effect, the County Seat election held in Upton County, Texas, on April 25, 1931, the election complained of in this suit, and said parties are perpetually enjoined from the removal from Rankin, Texas, of any books, records, papers, filed instruments, furniture, fixtures, equipment or property whatever belonging to the County of Upton.

"It is further ordered, adjudged and decreed that the purported election held in Upton County as aforesaid, on April 25, 1931, be and is hereby declared void, and that the order of the defendant, Mayburn L. Harris, County Judge, declaring the result of said purported election, which was recorded in the Minutes of the Commissioners' Court of Upton County, Texas, and in the Deed Records of said County be, and the same is hereby set aside and is of no force and effect."

The town of Rankin is on a railroad operating as a common carrier, and the gist of the suit was that the election held April 25, 1931, was void because Rankin had been selected as the county seat at an election held September 21, 1929, and therefore another county seat election could not be held for five years thereafter. See article 1601, R. S., as amended by Acts 1927, c. 185 (Vernon's Ann. Civ. St. art. 1601).

The election in 1931 was ordered by the county judge upon a petition presented to him in due form and with the requisite signatures. Due notice of the election was given. The returns of that election were canvassed by the county judge who entered his order finding that 424 votes were cast in favor of Rankin and 902 votes in favor of McCamey, and declared the result in favor of removing the county seat to McCamey.

The theory of the plaintiffs is that the election in 1929 barred the holding of another county seat election for five years (see article 1601, R. S.) and the election held in 1931 therefore unlawful and void.

On the other hand, the theory of the defendants is that the 1929 election was void, and for that reason the election in 1931 was valid.

■ By special exception the defendants also question the right of the plaintiffs and interveners to maintain the action.

The exception is to the effect that the plaintiffs and interveners have no such pecuniary interest in the subject-matter of the suit and removal of the county seat of the county as to entitle them to maintain the suit and to the relief sought, citing these authorities: Walker v. Tarrant County, 20 Tex. 20; Ex parte Towles, 48 Tex. 422; Harrell v. Lynch, 65 Tex. 151; Hughes v. Dubbs, 84 Tex. 502,

19 S. W. 684; Caruthers v. Harnett, 67 Tex. 127, 2 S. W. 523; Lewright v. Love, 95 Tex. 157, 65 S. W. 1089; City of San Antonio v. Strumberg, 70 Tex. 366, 7 S. W. 754; Staples v. State, 112 Tex. 61, 245 S. W. 639; Yett v. Cook, 115 Tex. 205, 281 S. W. 837; Maud v. Terrell, 109 Tex. 97, 200 S. W. 375; Allen v. Fisher, 118 Tex. 38, 9 S.W.(2d) 731; City of Goose Creek v. Hunnicutt, 118 Tex. 326, 15 S.W.(2d) 227; City of Goose Creek v. Hunnicutt (Tex. Com. App.) 39 S.W.(2d) 617.

We need not inquire whether the original plaintiffs and the interveners, city of Rankin, county of Upton, and the commissioners' court of that county, have the right to maintain the suit, for the state of Texas, as the trustee and guardian of the rights of its citizens, has "a justiciable interest in its sovereign capacity" in controversies of the present nature and can maintain this action for the protection of the rights of the people where they are themselves without remedy in the courts. The opinion of Chief Justice Cureton in Yett v. Cook, 115 Tex. 205, 281 S. W. 837, 843, plainly supports the view that the state may maintain this suit. See, also, Staples v. State, 112 Tex. 61, 245 S. W. 639.

It is therefore immaterial whether the plaintiffs and the other interveners have the right so to do. As to them, the overruling of the exception, if erroneous, is not reversible.

■ The point is also made that, if the state has the right to maintain the suit, its intervention should have been through the Attorney General, and the county attorney of Upton county had no right of his own motion to make the state a party.

But, as was said in Yett v. Cook, supra: "It is certain that, when once lawfully instituted he can, under the express language of the Constitution, represent the state. Const. art. 5, § 21. It is clear, however, that the county attorney can, under the direction of the Attorney General, institute a suit of this character in the name of the state."

This being true, it is not to be presumed that the county attorney intervened without direction from the Attorney General so to do, for "the acts of public officers are to be presumed to have been done in the proper manner and in the exercise of legitimate power, unless the contrary be shown." Wooters v. Hall, 61 Tex. 15; Guerra v. City of San Antonio, 1 Tex. Civ. App. 422, 20 S. W. 935.

This phase of the case is foreclosed against defendants by the authorities. In State v. Thompson, 64 Tex. 690, Judge Stayton said:

"It therefore made the power of the attorney-general to bring such suits to depend upon the advice and direction of three members of the board whose duty it was to make investigation.

"The state thus limited the power of the attorney-general, as it evidently had the right to do, through the legislature.

"The petition in this case does not contain any averment that the attorney-general was advised or directed to bring this suit, and one of the special demurrers presents this as an objection to the sufficiency of the petition.

"We have no doubt of the want of authority in the attorney-general to institute this suit, if in fact he was not advised or directed by at least three members of the board to bring it.

"The only question is, whether this question can be raised by an exception to the petition, or whether it should be presented by a plea of some kind raising an issue of fact.

"It is not contended that the attorney-general and the district attorney who brought this suit are not the proper officers and attorneys to bring suits in the name of and in behalf of the state; but it is urged that their authority must be shown by the averments of the petition.

"We are of the opinion that the same presumptions, as to their power to bring this suit, must be indulged as would be in any other.

"It is not to be presumed that the attorney-general was not advised or directed by the board to bring this suit.

"The fact, which it is claimed should be alleged, is not one bearing upon the right of the state to recover, but is one which bears upon the question of the authority of the officers who assume, and ordinarily have the power, to represent the state, to represent it in this case. The authority of these officers to represent the state must be questioned just as would the authority of any attorney assuming to represent a plaintiff in any other action; and this certainly could not be done by a demurrer to a petition which did not allege the power under which the attorney assumed to act in bringing a suit.

"The question depends upon an issue of fact, and not upon an issue of law which it is the office of a demurrer to raise.

"That a defendant may question the authority of an attorney to represent a plaintiff whom he assumes to represent is true. The proper mode of procedure, if it be desired to question the authority of an attorney assuming to represent a plaintiff, is for the defendant to file some pleading or motion denying his authority, thus raising an issue of fact upon which evidence may be introduced; and to throw the burden of proof from the defendant, it seems his pleading or motion should be sworn to."

In Randolph v. State, 73 Tex. 485, 11 S. W. 487, Judge Stayton again held that the authority of the Attorney General to bring the suit without specific direction so to do directly applicable to him cannot be raised by demurrer, citing State v. Thompson, supra, in support of his ruling. See, also, State v. Murphy (Tex. Civ. App.) 137 S. W. 708.

In the case at bar no plea or motion was filed questioning the lawful authority of the county attorney to intervene and prosecute the suit in the name of the state, and his authority so to do cannot be now questioned.

This brings us to the question upon which the merits of this case depend; that is, the validity of the election held in 1929. The undisputed facts are:

In August, 1929, two petitions were presented to the county judge of Upton county, one petition requesting "that you call an election to remove the County Seat of Upton County, Texas, from the place of its present location to the N. W. ¼ of the N. W. ¼ of the N. W. ¼ of the N. W. ¼ of Section 20, Block 37, of the T. & P. Rway Survey of Upton County, Texas," and the other petitioning the county judge "to order an election for the purpose of determining whether the county seat should be removed from the town of Rankin to the City of McCamey in Upton County, Texas."

The sufficiency of these petitions is not questioned.

On August 20, 1929, the county judge made and entered an order, the material portions of which read:

"Two petitions having been presented to me on the 12th and 13th days of August, A. D. 1929, one signed by W. H. Holcombe and more than one Hundred others praying for an election to determine if the Court House of Upton County, Texas, should be moved to Section 20, Block 37, T. & P. Ry. Co. land, in said County, or should remain at Rankin, the present location, the second petition signed by W. M. Davis and more than 100 others praying for an election to determine if the said Court House of Upton County should be removed to McCamey, Upton County, Texas, or should remain at Rankin, the present location;

"And it appearing to me that said petitions or that each of them are signed by at least 100 free holders and qualified voters who are resident citizens of said County:

"I, C. H. Latson, in my capacity as County Judge of Upton County, Texas, do hereby order an election to be held in said County at each of the voting places in said County on the 21st day of September A. D. 1929, for the purpose of determining the whether said County Court House shall remain at Rankin, present site, or be removed to Section 20 Block 37, T. & P. Ry. Co. land in said County or removed to McCamey in said County. All persons qualified voters under the constitution and laws of the State of Texas shall be entitled to vote at said election. On each ticket each voter shall write or cause to be written or printed:

"For removal to Section 20, Block 37, T. & P. Ry. Co. Land.

"For Removal to McCamey

"For remaining at Rankin."

The remaining portions of the order names the presiding judges of the voting box precincts, directs them to select their associates, judges and clerks, and "said election to be held as prescribed by law."

Notices of the election were issued by the county judge and due return of posting made by the sheriff. The notices read:

### "Notice of Election

"The State of Texas, County of Upton

"Notice is hereby given that an election will be held at each of the polling places in Upton County, Texas, on the 21st day of September, A. D. 1929, for the purpose of determining the removal of the Court House of said County to Section 20, Block 37, T. & P. Ry. Co. land in said County, or removal to the town of McCamey, in said County, or for remaining at Rankin, present location.

"George Ramer has been appointed presiding Judge at Polling Place Winfield Rodgers Motor Co. Bldg., at McCamey, Texas, Louis Yates at Polling Place, Sammons Hotel, Rankin, Texas, Dave Elder, Presiding Judge at Court House, Rankin, Texas; Silas J. Pittman Presiding Judge, Elder-McNeil Motor Co., Rankin, Texas; Bob Windham, polling place, Recreation Hall, Gulf-McElroy Camp. Each of said Judges shall select a judge and two clerks to assist him in holding the said election to be held as prescribed by law.

"All persons who are qualified voters under the constitution and laws of the State shall be entitled to vote at said election, and who have been in the State one year and resided in the County six months prior to this election.

"On each ticket each voter shall write or cause to be written or printed:

"For removal to Section 20, T. & P. Ry. Co. Land

"For removal to McCamey

"For remaining at Rankin

"Said election shall be held in pursuance of two petitions filed with me on the 12th and 13th days of August, A. D. 1929."

Later the county judge entered his order as follows:

"Whereas, on the 21st day of September there was held a special election held in the different precincts of Upton County, Texas, as to whether the Court House should be removed to Section 20, T. & P. Ry. Co. Land, for removal to McCamey, or remaining in Rankin, Texas, the present location;

"The returns of the said Election having been duly made and canvassed by me, it appears that said election there were the following amount of votes cast in the different precincts:

"Court House, in Precinct No. 1: 106 votes for remaining in Rankin, no votes for removing to McCamey, or Sec. 20, Blk. 37, T. & P. Ry. Co.

"Elder McNeil Motor Co. in Precinct No. 2: 85 votes for remaining in Rankin, 2 mutilated votes no votes for McCamey or Sec. 20, Block 37, T. & P. Ry. Co.

"Recreation Hall, Gulf McElroy Camp: 27 votes for remaining in Rankin, no votes for McCamey or Sec. 20, Block 37, T. & P. Ry. Co. Precinct No. 3.

"Mrs. Sammons Hotel, Precinct No. 4, Box 4: 103 votes for Co. Seat remaining in Rankin, no mutilated votes or no votes for McCamey or Sec. 20, Blk. 37, T. & P. Ry. Co.

"Winfield Rodgers Motor Co. Bldg. Precinct 4, Box No. 5: 39 mutilated votes, 51 votes for the Co. Seat to remain in Rankin, and 371 for the Co. Seat to be removed to McCamey, Upton County, No votes for removal to Sec. 20, Blk. 37, T. & P. Ry. Co.

"I, C. H. Latson in my capacity as County Judge of Upton County, Texas, do adjudge that said election results in favor of the Court House remain in Rankin. 'Let the Court House remain on Top of the Hill,' and I do hereby declare the said election in favor of Rankin, Texas."

This order was entered in the minutes of the commissioners' court, but was not recorded in the deed records.

It will be observed that, in the election order and the notices, the election is referred to as an election to determine whether the "courthouse" shall be moved and the order declaring the result is in favor of the "courthouse remaining in Rankin."

Article 1596, R. S. provides: "When it becomes desirable to remove the county seat of any county, the county judge of said county, upon the written application of not less than one hundred freeholders and qualified voters, who are resident citizens of said county shall make a written order upon the minutes of said commissioners court for the holding of an election at various voting precincts in said county on a day therein named, which shall not be less than thirty nor more than sixty days from date of order, for the purpose of submitting the question to the electors of said county."

Elsewhere in the chapter relating to the establishment and removal of county seats, such words are uniformly used instead of county courthouse or simply courthouse, as in the orders and notices of the 1929 election.

It is asserted that in a special election there must be a proper order for the election called by the proper authority, stating specifically its purpose in substantial compliance with the petition for such election, and

the order must call for such an election as is authorized by law; that the notice must state the purpose of the election and must substantially comply with the order, and the result must be declared by the proper authority and must conform to the petition, order of election, and notice, and in the present case the use of the word "courthouse" instead of "county seat" in the orders and notice constituted a variance from the petition and called for an election not authorized by law, and the election was therefore void.

It is not questioned that the county judge is the proper authority to order the election, issue the notice, and declare the result, as was here done. We have no fault to find with defendants' propositions of law as stated above, except the conclusion predicated upon the use of the word "courthouse" instead of "county seat."

The phrase "county seat" means the town or city where the seat of the county government is located, where the courthouse is, where the courts are held and the county officers perform their functions. Century Dictionary; Pitts v. Camp County (Tex. Com. App.) 39 S.W.(2d) 608; Ralls v. Parish (Tex. Civ. App.) 149 S. W. 810. It means "the place where the courthouse is situated, where the county offices are kept, and where the district and county courts for the county are held." Turner v. Tucker, 113 Tex. 434, 258 S. W. 149, 151.

The courthouse means the building at the county seat in which the courts are held, the records kept, and the officers of the county maintain their offices and perform their functions.

As a matter of pure English, courthouse is not synonymous with county seat. But in ordinary parlance they are so treated, both signifying the county seat of government.

In Couk & Duncan v. Skeen, 109 Va. 6, 63 S. E. 11, 13, it is said:

"In Virginia, as in some of the other states, the two terms are used as synonymous. Says Webster's International Dict.: 'The word "courthouse," in Virginia, is used as synonymous with "county seat." ' See, also, Shanewerk v. Hoberecht, 117 Mo. 22, 22 S. W. 949, 38 Am. St. Rep. 631; 2 Words & Phrases [First Series], p. 1683.

"The title to the act assailed on constitutional grounds in Ingles v. Straus [91 Va. 209, 21 S. E. 490], supra, as in this case, used the term 'courthouse' alone, and not 'county seat,' and there, as here, throughout the body of the act, the Legislature sometimes used the term 'courthouse' and sometimes the term 'county seat,' and clearly used them as having the same meaning. It is true that in that case the question here under consideration was not raised and doubtless the learned and astute counsel seeking to have the act in the former case declared unconstitutional took the view that as a matter of common knowledge the term 'courthouse,' in Virginia, is used as synonymous with 'county seat.' "

In Merchants N. Bank v. McNaron, 172 Ala. 469, 55 So. 242, 243, it was said: "In Matkin v. Marengo County [137 Ala. 155, 34 So. 171], supra, the terms 'courthouse' and 'county site' were taken to be, in ordinary parlance, synonymous, and to signify 'seat of government.' "

In Board of Revenue v. Huey, 195 Ala. 83, 70 So. 744, 746, it is said: " 'Courthouse' and 'county site' had been held to be synonymous, and to signify 'seat of government.' Matkin v. Marengo County, 137 Ala. 155, 164, 165, 34 So. 171; [Merchants Nat.] Bank of Lafayette v. McNaron [172 Ala. 469, 55 So. 242], supra."

It is evident the county judge regarded and treated courthouse as synonymous with county seat, for the petitions called for a county seat election. The order of election identifies the two petitions by reference to their filing dates and signatures. The order canvassing the votes and declaring the result uses the words interchangeably. In that order the word "courthouse" is frequently used, but in the following excerpts "county seat" is used:

"Mrs. Sammons Hotel, Precinct No. 4, 103 votes for Co. Seat remaining at Rankin * * * Winfield Rodgers Motor Co. Bldg. * * * 51 votes for the Co. Seat to remain in Rankin, and 371 for the Co. Seat to be removed to McCamey."

In Graves v. Rudd (Writ Ref.) 26 Tex. Civ. App. 554, 65 S. W. 63, it is said:

"Again, it is insisted that the law was not in force in Grayson county, because the petition was for an election 'to determine whether horses, mules, jacks, jennies, and cattle' should be prohibited from running at large, while the order for election and the notices of election contained the word 'jennets,' instead of 'jennies.' The contention is that these words do not mean the same thing. The criticism is not sound. There can be no doubt as to what animals were meant by the petition. The rule is that the ordinary signification of words is to be given them.

"It is further insisted that the law is not in force in Grayson county, because the petition, notices of election, and order for election used the words 'horses, mules, jacks, jennets, and cattle,' while the order declaring the result of the election used the words 'horses, mules, jacks, jennies, or cattle.' There is no force in this contention. There is no uncertainty in the petition, notices of election, order for election, and the order declaring the result."

No voter in Upton county in 1929 could have misunderstood the question for which the election was ordered and notice given. This would be true of those who are trained in the niceties and distinctions of the English language as well as those who are not so learned. The use of the word "courthouse"

instead of "county seat" could not have mislead any voter or affected the vote and result in the slightest degree. If any voter might have had in mind the distinction between the meaning of the words, he would nevertheless and of necessity have known that "courthouse" was being used as a synonym of and in the sense of "county seat."

In our opinion, the irregularity is not substantial and did not invalidate the election. We regard the order of election, the notice and the order declaring the result as in substantial compliance with the statutory provisions and valid. Another election upon the same question could not be held for five years. Article 1601, R. S. The 1931 election was therefore unauthorized and invalid.

The failure to record in the deed records of the county a certified copy of the order declaring the result of the 1929 election, as required by article 1599, R. S., did not invalidate the election.

This statutory direction is intended merely to evidence upon those records the location of the county seat, and the failure to make such record would not destroy the validity of an election previously held and the result declared by the proper authority.

Affirmed.